**DEVEX CORPORATION et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 3058.**

United States District Court
D. Delaware.

Jan. 16, 1967.

David F. Anderson, Berl Potter & Anderson, Wilmington, Del., Walter J. Blenko, Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., of counsel, for plaintiffs.

Thomas S. Lodge, Connolly, Bove & Lodge, Wilmington, Del., George N. Hibben, Hibben, Noyes & Bicknell, Chicago, Ill., Neal A. Waldrop, Harness, Dickey & Pierce, and George N. Shampo, Detroit, Mich., of counsel, for defendant.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a civil action for patent infringement. The patent in suit is Number 24,017; the only claim at issue is number 4.[1] The plaintiff, Devex Corporation (Devex), has moved for summary judgment. Fed.R.Civ.P. 56(a).

■■ Prior to any consideration of the merits of Devex' motion an account of the history of this litigation is essential to place this case in proper perspective. The complaint was filed in the Northern District of Illinois on November 13, 1956. Before answering General Motors Corporation (GM) moved for a dismissal on the ground of improper venue. Section 1400(b), 28 U.S.C.A. (1948), provides that venue in patent actions, shall be in either: the district where the defendant resides, or the district where the defendant has committed acts of infringement and has a regular and established place of business. Where the defendant resides has been consistently interpreted to mean, in the case of a corporate defendant, the state of incorporation.[2] Since GM is a Delaware corporation, the plaintiff's decision to lay venue in the Northern District of Illinois was necessarily predicated upon the defendant's having committed acts of infringement within that district. The motion to dismiss was denied by Judge Barnes, who expressly reserved the question of venue.[3] On July 16, 1957 GM an-

1. Claim 4 reads as follows:
 "4. The process of working ferrous metal which comprises forming on the surface of the metal a phosphate coating and superimposing thereon a fixed film of a composition comprising a solid meltable organic binding material containing distributed therethrough a solid inorganic compound meltable at a temperature below the melting point of the ferrous metal phosphate of said coating and having a hardness not exceeding 5 on the Mohs' hardness scale, and thereafter deforming the metal."

2. Dover Corp. v. Fisher Governor Co., 221 F.Supp. 716, 719 (S.D.Tex.1963); Brevel Products Corp. v. H & B American Corp., 202 F.Supp. 824, 826 (S.D. N.Y.1962); C-O-Two Fire Equipment Co. v. Barnes, 194 F.2d 410 (7th Cir. 1952), aff'd sub nom. Cardox Corp. v. C-O-Two Fire Equipment Co., 344 U.S. 861, 73 S. Ct. 102, 97 L.Ed. 695.

3. Judge Barnes' remarks from the bench on May 27, 1957 were as follows:
 "Well now, I have thought quite a bit about this case. Venue here is based upon the fact that it is alleged that an infringement was committed in this district, is that it?

 \* \* \* \* \*

 "I am not going to try that patent case on a motion to dismiss, you just make up your minds about that. The plaintiff will have to take his chances if he goes through this patent case and does not prove an infringement in this district. I guess I would not have jurisdiction because I wasn't the proper venue, and anything I would say,

swered. Paragraph 11 of its answer again challenged the propriety of the plaintiff's choice of venue.

On February 4, 1959 Devex moved in the Illinois District Court to consolidate the action against GM with a similar action pending in the same district against Houdaille Industries (Houdaille). GM objected to the consolidation of the two actions on the ground that venue had not been established with respect to GM. But after a pretrial conference Judge Robson ordered consolidation of the two cases. In order to protect GM Judge Robson's order provided for a consideration of the venue question before any decision on validity was entered with respect to GM.

"(2) Immediately following the conclusion of said consolidated trial on the common issue of validity, the issue of infringement within the Northern District of Illinois by General Motors Corporation as it relates to the issue of venue of that Defendant will be tried in Civil Action No. 56 C 1912.

"(3) The issue of infringement within the Northern District of Illinois by defendant General Motors Corporation in Civil Action No. 56 C 1912 *will first be decided* by this Court in order that the issue of venue of that defendant may be determined prior to the rendering of any decision on the issue of validity with respect to defendant General Motors Corporation." (Emphasis added.)

The case, as consolidated, went to trial on the question of validity. On February 1, 1962 Judge Robson handed down his decision on validity, holding the patent invalid. On June 29, 1962 Judge Robson entered his Findings of Fact and Conclusions of Law and a Final Judgment, dismissing the complaints in *each* action with prejudice. GM did not object to the entry of judgment despite the outstanding venue issue.

Devex took an appeal to the Seventh Circuit. There was no cross-appeal by GM. The Seventh Circuit reversed Judge Robson, held claim 4 valid, and remanded both cases to the District Court for further proceedings. On January 14, 1965 Judge Robson entered an order "as directed by the Mandate of the Court of Appeals" holding claim 4 valid.

Devex instituted discovery on the venue question, but on April 20, 1965 decided to present a motion for transfer under 28 U.S.C.A. § 1406(a) (1948). Devex sought transfer to the District of Delaware. The motion was heard by Judge Robson on June 23, 1965, together with GM's motion to dismiss under § 1406(a) and a further GM motion to vacate paragraph 1 of the Court's judgment order of January 14, 1965 in the event the transfer should be granted.[4] Judge Robson granted the plaintiff's motion to transfer and denied *both* of the defendant's motions.

On January 3, 1966 the plaintiff filed the instant motion for summary judgment. Devex contends that the validity of the patent has been established, and that the January 14, 1965 judgment of the Illinois District Court remains bind-

---

other than to dismiss the case, would be without jurisdiction.

"That is the chance the plaintiff is taking. I have not seen the patent yet. I am not going to attempt to try the case on a motion to dismiss.

\* \* \* \* \*

"I am just telling you that I have been thinking about it a long time. Since you are both here I would like to tell you right now. I am not sure you should thank me. If there is no showing to prove infringement in this district you won't have an adjudication."

By way of expanding Judge Barnes' remarks, it should be noted that the de-

gree of use required to establish proper venue is of a lesser order of magnitude than that required to establish infringement for liability purposes. Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38 (S. D.N.Y.1964). If *Watsco* is correct then the fact that the plaintiff fails "to prove infringement" within the forum district at trial may not "deprive him of an adjudication" with respect to infringements in other districts.

4. The January 14, 1965 order, it will be recalled, was Judge Robson's entry of a final judgment of validity.

ing upon the defendant. The plaintiff further contends that GM's answers to interrogatories 2–5 and 12 constitute admissions of infringement. Accordingly, the plaintiff argues for the entry of summary judgment on the grounds that no further issues remain for adjudication between the parties.

GM resists the motion on two grounds: first, GM argues that the question of validity has not been determined because the January 14th order is ineffective for want of proper venue; second, GM denies that its answers to interrogatories admit infringement.

Plaintiff's argument that the validity issue has been settled rests upon the premise that GM has waived its venue defense. In support of this essential premise the plaintiff cites Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (Frankfurter). *Neirbo* stands for the proposition that venue is something less than an absolute right; it is a privilege intended for the convenience of the litigant which may be waived by conduct inconsistent with the assertion of the privilege. Specifically *Neirbo* holds that the designation of a statutory agent for service of process in order to qualify a foreign corporation to transact business in the state constitutes a waiver of venue in any subsequent federal court proceedings. However, *Neirbo* cannot be construed to make the act of participation in court proceedings following a timely venue objection a waiver. Professor Moore, in discussing Rule 12 of the Federal Rules, clarifies any possible confusion:

"Under the former practices, both at law and in equity, a party could, by proper procedure, raise the defenses (1)–(5), and losing thereon proceed to litigate on the merits, and losing on the merits appeal, and attack the judgment, both on the merits and on such grounds (1)–(5) as he had urged. Thus a judgment on the merits for the

plaintiff would be set aside, where the defendant had properly challenged * * * that the venue was improper, and [that] the lower court was in error in denying his defense. Rule 12(b) does not change that rule." 2 Moore, Federal Practice ¶ 12.12 (2d ed. 1965).

█ Although the defendant's appearance and defense on the merits do not constitute a waiver of the venue objection timely made, GM's subsequent conduct did amount to such a waiver. Having prevailed on the merits before Judge Robson, GM permitted Judge Robson to enter judgment in its favor, despite the language of the Judge's own order of consolidation which assured GM that the venue matter would be considered *before* entry of judgment on the validity question. There is no record objection on the part of GM to Judge Robson's departure from the procedure outlined in his order of consolidation. One can only assume that GM condoned, indeed applauded, the entry of judgment. Also, despite Judge Barnes' denial of GM's motion to dismiss for improper venue, GM neglected to take a cross-appeal to the Seventh Circuit in order to present to that tribunal its venue contentions.[5] GM's condoning of Judge Robson's departure from his own order, and its failure to take a cross-appeal on the venue matter were fatal. This Court holds that GM waived its venue rights before Judge Robson. The transparency of GM's conduct is apparent. By arguing before the Seventh Circuit for affirmance of Judge Robson, GM sought to preserve a judgment which would operate as res judicata in any subsequent actions between the parties. GM's strategy, having succeeded on the merits, was to discard its venue contentions which, even should they prove successful, would not be as efficacious as a judgment on the merits.

This Court's holding that the failure to take a cross-appeal constituted a waiver of venue objections is not an unprece-

---

5. Judge Barnes' denial of GM's motion to dismiss and Judge Robson's entry of a final judgment of invalidity before he re-

solved GM's venue contentions, presented a sufficient foundation from which a cross-appeal could have been taken.

dented one. Peoria & Pekin Union Ry. Co. v. United States, 263 U.S. 528, 44 S.Ct. 194, 68 L.Ed. 427 (1924) (Brandeis). In *Peoria* the plaintiff brought an action in the Southern District of Illinois against the United States to enjoin the enforcement of an order of the ICC. The proper venue for the action was the District of Iowa, and the United States made timely objection to the Illinois venue. The objection was overruled and the United States prevailed on the plaintiff's motion for a temporary injunction. The plaintiff appealed the denial of the motion for a temporary injunction; the United States failed to take a cross-appeal on the venue point. The Supreme Court held the United States' neglect was fatal.

> "The provision that suit shall be brought in the district of the residence of the party on whose petition the order was made is obviously one inserted for his benefit. If there were a lack of jurisdiction in the District Court over the subject matter, we should be obliged to take notice of the defect, even if not urged below by the appellee. [Citation omitted] But the challenge is merely of the jurisdiction of the court for the particular district. The objection is to the venue. [Citation omitted] This privilege not to be sued elsewhere can be waived * * *. The United States was * * * entitled to insist upon compliance with the venue provision, and its objection was properly taken below. But, by failure to enter a cross-appeal from the court's action in overruling its objection, the right to insist upon it here was lost." 263 U.S. at 535–536, 44 S. Ct. at 196.

The GM rejoinder to the *Peoria* case is that there the venue contentions of the United States had been fully heard and disposed of, laying the foundation for an appeal, whereas in the present case GM contends there has been no consideration of the venue question. GM overstates its case. Judge Barnes had denied a venue objection early in the case. And further, Judge Robson violated his own order and entered a judgment in GM's favor without first handling the venue objection. Judge Robson's conduct in entering a judgment presumes venue, because, to turn GM's argument back upon itself, if venue had been wanting there could be no entry of a valid judgment—despite the fact that it went in GM's favor. Thus, GM did have a sufficient foundation from which to take a cross-appeal.

Having been reversed on appeal GM sought to reinstate its venue objection before Judge Robson on January 14, 1965 at the hearing regarding the entry of a judgment of validity. Judge Robson severed the GM case from the Houdaille case and his order seems to contemplate giving GM a second chance to urge their venue objection.

GM never got that chance. On June 23, 1965, at oral argument, Judge Robson granted the § 1406(a) transfer to Delaware. In granting the transfer Judge Robson denied the defendant's motion to dismiss; he felt that transfer was the better alternative to conserve judicial effort.

> "While ordinarily a motion to transfer coming this late in litigation would be frowned upon, yet where there was the separation of issues with trial only on validity, there has been no loss of time."

Clearly, if the existing validity determination were to be void, there would have been a great loss of time, and a transfer to a District where the case would have to be recommenced would be wasteful.

Judge Robson's comments from the bench indicate that his action in transferring the case stemmed from a desire to avoid a legal hassle about whether "experimental use" of an infringing product would be sufficient to lay venue in the Northern District of Illinois. Judge Robson's comments about conserving judicial energy and avoiding added issues, when viewed in context, support the view that Judge Robson anticipated that this Court would eschew any reconsideration of the validity question.

Finally, and perhaps most significantly, Judge Robson denied the defendant's motion to strike paragraph 1 of his January 14, 1965 order holding the patent valid. If, as GM maintains, Judge Robson's transfer acknowledged the lack of venue over GM, then the proper course of action would have been for Judge Robson to revoke the judgment insofar as GM was concerned. Judge Robson's express denial of just such an order bespeaks his understanding that the validity determination would be accepted by this Court as the law of the case.

 Conceptually, however, the posture of the case is distressing. If venue was waived, and this Court holds that it was, then transfer to this District should have been made under 28 U.S.C.A. § 1404(a) (1948), rather than under § 1406(a). This inconsistency permits of two remedies. Either this Court may re-transfer on its own motion on the ground that a § 1406(a) motion would not lie; or, this Court may accept the transfer and treat it as having been made under the proper statutory authority—§ 1404 (a). Expediency and comity dictate the latter course of action. Gulf Research & Development Co. v. Schlumberger Well Surveying Corp., 98 F.Supp. 198 (D.Del. 1951) (Leahy, C. J.), mandamus denied sub nom. Gulf Research & Development Co. v. Leahy, 193 F.2d 302 (3d Cir. 1951), aff'd, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952).

 *Gulf Research* is a much cited precedent which admonishes against re-transfers. The rationale is that courts of coordinate jurisdiction should not usurp an essentially appellate function and pass upon the correctness of discretionary transfer orders. As Judge Leahy so aptly put it:

"Regardless of my own view as to whether the California Court was right in its interpretation of §§ 1391(c) and 1400(b), and, admittedly, there is serious conflict as to the proper interpretation of those sections, I do not think it meet or proper that I review Judge Harrison's decision on the merits. To do so would be a usurpation of an appellate function; * * *. * * * It is now for an appellate court—not for me—to correct any error, if error there be, in his opinion. It is not only the principle of comity and the fact that Judge Harrison's opinion may be likened, at this stage, to the 'law of this case' which compels me to this conclusion, but, what seems of most importance to me are considerations for the orderly functioning of the judicial process." 98 F.Supp. 200–201.

 Mindful of Judge Leahy's counsel, this Court declines to retransfer the case to Illinois. The Court holds that venue was waived in Illinois, and intends to apply the validity determination of the Seventh Circuit as the law of the case.

"Where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." 1B Moore, Federal Practice ¶ 0.404 [10] (2d ed. 1965).

Applying Professor Moore's teaching to the facts of this case, the validity issue was set to rest by the Seventh Circuit, and was binding upon Judge Robson as the law of the case in subsequent proceedings. It has been recognized by commentators that, as far as transferee courts are concerned, the law of the case doctrine applies to rulings on points other than the actual transfer. With respect to such questions other than transfer the transferee court takes the case in the same posture as if it had not been transferred.[6] Accordingly, if the validity determination of the Seventh Circuit

6. 1B Moore, Federal Practice ¶ 0.404[8]. "The issue is somewhat different, however, when the transferee—district court is asked to reconsider a ruling that does not involve transfer. Here the issue is much the same as if the case had not been transferred. Ordinarily one judge does not consider a point previously decided by another judge of co-ordinate jurisdiction, and hence such pre-transfer rulings should ordinarily stand."

bound Judge Robson then this Court is similarly bound.

■ One final argument which lends support to the Court's conclusion that the law of the case doctrine should be applied to preserve the validity determination of the Seventh Circuit is the fact that here a full dress trial and appeal of the question have been had. Concededly, the law of the case doctrine is not a limitation upon a court's power. However, courts should be even more constrained to transgress the doctrine where a full trial and appeal of the question, involving a substantial investment of judicial energy, have occurred. See 1B Moore, Federal Practice ¶ 0.404[4] (2d ed. 1965). Cf., Dalzell v. The St. Nicholas, 109 F.Supp. 595 (S.D.N.Y.1951).

■ There is an alternative route by which the validity determination of the Seventh Circuit may be preserved without altering the authority for the motion from § 1406 to § 1404(a). Assuming *arguendo* that the Illinois court lacked venue, it did not lack the *power* to deal with the defendant's substantive rights. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (Black). In *Goldlawr* the Supreme Court condoned a § 1406(a) transfer from the Eastern District of Pennsylvania to the Southern District of New York where the transferor court *lacked personal jurisdiction* over the defendants. The transfer was to avoid the running of the statute of limitations. Mr. Justice Harlan's stinging dissent assures us that the issue was squarely before the majority:

> "The notion that a District Court may deal with an *in personam* action in such a way as possibly to affect a defendant's substantive rights without first acquiring jurisdiction over him is not a familiar one in federal jurisprudence." 369 U.S. 467-468, 82 S.Ct. 916.

The majority saw no reason why the fact situation did not present an appropriate occasion for the invocation of § 1406(a)'s transfer power. The purpose of § 1406(a) is to remove

"whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. * * * If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.' " 369 U.S. 466-467, 82 S.Ct. 916.

In this particular case Judge Robson invoked § 1406(a) for precisely the same reason, to avoid that waste of judicial effort which would have attended a dismissal and recommencement of the case. Further, in this case, unlike *Goldlawr*, the Northern District of Illinois had personal jurisdiction of the defendant. The rationale of *Goldlawr* may be felicitously applied in the present case to avoid a tedious reconsideration of issues fully and effectively litigated by the parties in the transferor forum. To refuse to follow the Seventh Circuit's determination would unnecessarily prolong a case which has already aged ten years.

Having accepted the first premise of Devex' motion, that the patent is valid, it remains for the Court to consider whether there remain any material issues of fact with respect to infringement. The patent in suit relates to the lubrication of metal for drawing and forming operations. Specifically, the patent calls first for the application of a phosphate coating to the metal, and the superimposition thereon of a fixed film containing a solid meltable organic material which in turn contains a solid inorganic compound with a melting point below that of the phosphate. The coating and fixed film lubricant permits the execution of drawing operations with a minimum of abrasion either of the material being drawn or the dies used in the draw.

The defendant, GM, purchases lubricating materials, called Bonderlube 235

and 246 from the Parker-Rustproof Company. These materials are used in its drawing operations. Plaintiff alleges that these lubricants, when superimposed upon a phosphate coating, infringe claim 4 of the patent. Devex contends the infringement is admitted by GM's answers to certain interrogatories. Summary judgment is thought to be a suitable remedy because, based on similar answers to interrogatories, Judge Robson granted summary judgment in the companion case against Houdaille.

■■■■ However, this case is in a very different posture from the companion Houdaille case. Here the case has been transferred to another District. The issues are before another court, which lacks the benefit of having heard the testimony on validity. It is well-established that the extent of the prior art determines the scope of the proffered invention, and that any claims of infringement must be viewed against the backdrop of the prior art.[7] Further, the construction of a claim when its validity is contested controls the construction of that same claim when its infringement is alleged. The patentee cannot urge a restrictive interpretation of his claim to avoid invalidity and then an expansive interpretation to ensnare infringers.

■■■■ The doctrines set forth above are especially important when the defendant is charged with infringement with respect to a process which does not explicitly overlap the patent and which may exhibit salient differences from the patentee's process. Specifically, before the Seventh Circuit Devex relied heavily upon a series of tests run by one Friedberg to demonstrate its patent's improvements over the prior art. The Friedberg tests involved draws conducted under high pressures involving severe deforma-

tion of the metal, whereas the GM operation involves much lower pressures. And Henricks, the patentee, himself stated that it is a high pressure operation generating sufficient heat to thaw the meltable pigment which forms a part of his invention. The Court requires the aid of expert testimony to determine whether these differences are, or are not, important. Likewise, the patentee's invention is said to consist in part in its ability to avoid the formation of water insoluble compound—zinc stearate—which impedes the cleaning process after the draw is completed. To achieve this result the patentee employed a compound containing sufficient borax—the solid inorganic compound—to emulsify the zinc stearate. Infra-red tests conducted at the behest of GM demonstrated the presence of significant amounts of zinc stearate in those GM operations which Devex contends infringe the patent. Absent a trial the Court is unable to conclude that these differences are insignificant.

■■■■ The plaintiff, in its "Reply to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment," contends that such factors as the formation of zinc stearate are irrelevant. The plaintiff would have the Court hold that the application of a soap and borax film over a phosphate coating, regardless of the manner in which these constituents operate to facilitate the drawing process, constitutes infringement. In support of this position the plaintiff cites a series of cases which hold that the inventor does not have to understand the scientific principles by which his invention operates.[8] These cases are inapposite. Although the "theory" is not prerequisite to patentability, it is important when scrutinizing for infringement. If an allegedly infringing process

---

7. See, e. g., Huntman Stabilizer Corp. v. General Motors Corp., 144 F.2d 963 (3d Cir. 1944), cert. denied, 323 U.S. 782, 65 S.Ct. 271, 89 L.Ed. 624.

8. E. g., Diamond Rubber Co. v. Consol. Tire Co., 220 U.S. 428, 435–436, 31 S. Ct. 444, 447, 55 L.Ed. 527 (1911). "And how can it take from his [the patentee's] merit that he may not know all of the forces which he has brought into operation? It is certainly not necessary that he understand or be able to state the scientific principles underlying his invention, and it is immaterial whether he can stand a successful examination as to the speculative ideas involved."

falls within the literal language of the claim, but can be shown to operate in a different manner from the patented process then there is no infringement. Specifically, in the present case the patent teaches the application of a soap and borax solution over a phosphate coating. The patent was granted over the prior art German process because of Henricks', the patentee's, contentions that the patent represented a significant advancement in the art since it eliminated the formation of water insoluble compounds such as zinc stearate. The essence of Henricks' invention was the improved "cleanability" offered by his process.[9] If the GM tests be believed then the GM process cannot infringe because it presents the same cleaning problems found in the art prior to the Henricks' patent.

■ In conclusion, the Court believes that to exercise its discretion and grant summary judgment would be most unwise because of the existence of what appear to the non-technical mind to be genuine and significant issues. It may well be that what the Court perceives to be significant issues will turn out to be unimportant after a full trial. Regrettably, the Court has not had the benefit of having heard the testimony concerning validity, and must, perforce, approach the infringement issue cautiously. That some factual ground will have to be retraced is the inevitable result of the parties having sought transfer at the later stages of a complicated litigation. Such a course should generally be avoided, especially in patent cases, because of the inevitable duplication of judicial effort required to educate the transferee court in the patent's technology.

In accordance with the foregoing opinion, the plaintiff's motion for summary judgment is denied.

Submit order.

---

9. Henricks testified in his deposition of April 28, 1960:

"That is one of the differences, as I see it, between my invention and the prior art. In other words, I did not put forth any reaction such as zinc stearate." p. 49

The Court of Appeals for the Seventh Circuit made this one of their reasons for rejecting the argument that claim 4 was anticipated by the prior art:

"There is substantial evidence in the record to prove that a new coaction between the soap, borax and phosphate occurred during the drawing process. Friedberg's tests showed that in the Henricks' process, new compounds are formed; *the formation of insoluble organic compounds is inhibited,* and the abrasive phosphate is transformed into a glassy amorphous compound having highly effective lubricating properties." Devex Corp. v. General Motors Corp., 321 F.2d 234, 237 (7th Cir. 1963) (Emphasis added.)