**FUNNELCAP, INC., Plaintiff,**

v.

**ORION INDUSTRIES, INC., Defendant.**

Civ. A. No. 74-217.

United States District Court, D. Delaware.

April 10, 1975.

**940**

Aubrey B. Lank of Theisen, Lank & Mulford, Wilmington, Del., Berton Scott Sheppard of Wolfe, Hubbard, Leydig, Voit & Osann, Ltd., Chicago, Ill., for plaintiff.

Paul E. Crawford of Connolly, Bove & Lodge, Wilmington, Del., Fulwider, Patton, Reiber, Lee & Utecht, Vern Schooley, Long Beach, Cal., for defendant.

OPINION

STAPLETON, District Judge:

The complaint in this case asserts claims of patent infringement, deceptive trade practices, unfair competition, and common law trademark infringement. Defendant has moved to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss the case for lack of jurisdiction. Plaintiff, in addition to opposing the transfer motion, has countermoved to add a defendant, to enjoin an action which has already been commenced by the proposed new defendant in the Central District of California,

to strike certain of plaintiff's affidavits, and for an award of attorneys' fees for the work necessitated by defendant's transfer motion.

**I. PLAINTIFF'S MOTION TO AMEND.**

Plaintiff, FunnelCap, Inc., (hereinafter "FunnelCap") commenced this action on October 21, 1974. At the time, the sole named defendant was Orion Industries, Inc. (hereinafter "Orion"), a Delaware corporation. The complaint charged that "defendant, through its Hollywood Accessories Division, has heretofore made, used, and/or sold funnel devices . . . which infringe [plaintiff's] letters patent. . . ." [1]

On January 21, 1975, an affidavit was filed by Alan Krauss, the President of Orion. In his affidavit, Mr. Krauss alleged that, on June 1, 1973, Orion sold its Hollywood Accessories Division to Cal. Custom Accessories, Inc.[2] (hereinafter "Cal Custom"). Accompanying the affidavit was a purported agreement of sale, dated June 30, 1973.[3] In a supplementary affidavit filed the same day as the Krauss affidavit, Frederick Gibbons, identified as the President of Hollywood, asserted that Hollywood Accessories was a "division of Cal Custom Accessories, Inc." [4] Shortly thereafter, FunnelCap moved to amend its complaint to add Cal Custom Accessories, Inc. as a party defendant.

Rule 15, F.R.Civ.P. dictates that leave to amend pleadings be freely given when "justice so requires." That the interests of justice require allowing the amendment in this case can best be understood from a sketch of the circumstances which led FunnelCap to sue Or-

---

1. District of Delaware, Civil Action No. 74–217, File Document No. 1, at ¶ 7.

2. File Document No. 15.

3. In light of the Krauss affidavit, the Court is willing to assume for the time being that Orion made an inadvertent mistake when it admitted in paragraph 1 of its answer (filed

the same day as the Krauss affidavit and Gibbons supplementary affidavit) the allegations of paragraph 2 of plaintiff's amended complaint which included an assertion that Hollywood Accessories was a division of *Orion.*

4. File Document No. 14 at ¶ 1.

ion in the first place. Plaintiff FunnelCap has submitted uncontradicted affidavits from its President, Vice-President, as well as its attorneys, along with accompanying documents, which tend together to establish that Hollywood Accessories has in the past held itself out as a division of Orion Industries and continues to do so. Hollywood Accessories, according to the affidavits and documents, and so identified in a March, 1971 letter from its President to FunnelCap inquiring about samples and a license [5] and was so identified by Hollywood sales representatives at an October, 1973 trade convention,[6] as well as in an October 1974 trade journal,[7] as well as in Hollywood Accessories' 1974 and 1975 catalogues.[8] Moreover, according to plaintiff's affidavits, products of Hollywood Accessories currently being marketed in Delaware and Illinois bear labels identifying Hollywood as a "division of Orion Industries, Inc."[9] Further, the initial notice of infringement sent by FunnelCap's attorney in October of 1973 was addressed to "Hollywood Accessories, Division of Orion Industries," and despite a number of subsequent contacts between the parties, Orion had never, prior to the time of suit, advised FunnelCap that Hollywood had at any point ceased to be a division of Orion.[10]

This suit, as already noted, was commenced on October 21, 1974. On December 12, 1974, Orion filed a "motion to dismiss or in the alternative to transfer pursuant to 28 U.S.C.A. § 1404(a)."[11] Accompanying the motion was an affida-

vit of a Frederick O. Gibbons, identified as the President of "Hollywood Accessories," and "affiliate of Orion Industries, Inc."[12] In this affidavit Gibbons asserted that "Orion Industries, Inc. is involved in the marketing of automotive accessories to the automotive aftermarket and *has in the past marketed the accused 'snap-on Oil Can Funnel No. 22' through Hollywood Accessories, but discontinued marketing thereof prior to the issuance of the patent in suit. . . . ."* [13] In context, this conveyed the impression that Hollywood was a division of Orion, that it had once marketed the accused product, but that it no longer did so.

On January 6, 1975, Orion filed a second Gibbons affidavit, in which the foregoing assertion about Orion's involvement in the alleged infringing activities was carefully qualified:

> Orion Industries, Inc. . . . has in the past been associated with the offering for sale the (sic) accused "snap-on Oil Can Funnel No. 22" through Hollywood Accessories, but has never actually manufactured, sold or used such funnel.[14]

The import of this qualification became clear on January 21, 1975 when Orion filed its opening brief on its transfer motion, with the accompanying Krauss affidavit, finally divulging the alleged sale of Hollywood to Cal Custom.

█ Given that FunnelCap's allegations about the manner in which Hollywood has done business stand uncontra-

---

5. File Document No. 21, attached Exhibit A.

6. File Document No. 21, at ¶ 10 and attached Exhibit F.

7. File Document No. 23, at ¶ 22 and attached Exhibit G.

8. File Document No. 23, at ¶¶ 10, 27 and attached Exhibits D, J.

9. File Document No. 22 at ¶¶ 3 and 4 and No. 20 at ¶¶ 18–22.

10. File Document No. 20 at ¶¶ 3, 16.

11. File Document No. 6.

12. *Id.*, attached Affidavit of Frederick O. Gibbons, at ¶ 1.

13. *Id.*, at ¶ 3 (emphasis added).

14. File Document No. 11, attached affidavit at ¶ 3.

dicted, that FunnelCap promptly moved to amend upon first becoming aware that Cal Custom might ·be an appropriate party defendant, and that the delay between the filing of the complaint and the offer of the amendment has been principally the result of the approach taken by Orion in the papers filed by it, the Court believes that FunnelCap's motion should be granted.

## II.  DEFENDANT'S MOTION TO TRANSFER.

28 U.S.C. § 1404(a) provides:

> For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division in which it might have been brought.

In order to obtain the transfer of this action, Orion must thus show *both* that this action "might have been brought" in the Central District of California *and* that the convenience of the parties and witnesses and the interests of justice require that the suit be brought there.

■  With regard to the first element, 28 U.S.C. § 1400(b), the statute governing venue in patent actions, provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

In the context of a corporate defendant, "the judicial district where the defendant resides" means the judicial district of the defendant's corporate domicile. Orion's domicile is Delaware.  It is agreed, however, that Orion has a regular and established place of business in the Central District of California. Thus, whether Orion has "committed an act of infringement" in that district is the critical question.

Emphasizing Orion's claim that it was not responsible for the acts of Hollywood during the relevant period, FunnelCap argues that Orion has failed to demonstrate that the Central District of California is a district "where the defendant has committed acts of infringement."  Orion responds, however, that the acts of infringement for which it is alleged to be responsible occurred in the Central District of California and that FunnelCap's own allegation to this effect is sufficient to establish that venue lay in that district at the time of the filing of the complaint.[15]

■  Ordinarily, when venue is challenged, courts require the plaintiff to show facts establishing venue at the outset of litigation in order to give defendant the protection which the venue statute intended him to have—that is, protection against having to litigate a case in a forum which does not meet the statutory criteria.  Thus, for example, courts in applying Section 1400(b), have routinely required plaintiffs to establish the defendant's continuing business presence in the forum district before compelling the defendant to litigate on the merits.[16]  For this reason, transfer under Section 1404 is granted only upon a showing by the defendant that it has "a regular and established business" in the proposed transferee district.[17]

■■  As Orion points out, however, where the terms of a venue statute make venue turn on questions associated with

---

15.  It does not, in fact, appear in the current record, either by way of affidavit or allegation, that Hollywood manufactures or sells the accused device in the Central District of California but the Court has assumed for present purposes that it does.

16.  *See, e. g.,* Penntube Plastics Co. v. Fluorotex, Inc., 336 F.Supp. 698, 701–02 (D.S. C.1971).

17.  *See, e. g.,* Siemens Aktiengessellschaft v. Sonotone Corp., 370 F.Supp. 970 (N.D.Ill. 1973).

the merits of the case, courts in some circumstances consider venue to be established solely by the allegations of the complaint. For example, despite the "act of infringement" language of the patent venue statute, courts have consistently held that an allegation of infringement is itself sufficient to establish venue and plaintiff is not required to demonstrate actual infringement by defendant's device. *See, e. g.,* Gunter & Cooke, Inc. v. Southern Elec. Serv. Co., 256 F.Supp. 639, 648 (D.N.C.1966), aff'd, 378 F.2d 60 (4th Cir. 1967); Dover Corp. v. Fisher Governor Co., 221 F. Supp. 716, 720 (S.D.Tex.1963).

In the present case, Orion claims that the issue of whether it engaged in an accused act in the forum district (or was so connected with such an accused act as to be legally responsible therefor) is an issue relating to the merits of the litigation and should be treated like the issue of infringement. Plaintiff, on the other hand, maintains that the issue here presented is more like the issue of whether an arguably infringing act has occurred within the forum district. As to that issue, courts have consistently required proof by the plaintiff before compelling defendants to litigate on the merits. *See, e. g.,* Dow Chemical Co. v. Metlon Corp., 281 F.2d 292, 295 (4th Cir. 1960). There is language in the case law which will support the view of either side.[18] The Court concludes, however, that plaintiff's view is more in conformity with the intent of the venue statute.

■ The purpose of the patent venue statute is to limit plaintiff's choice of forum to the district of defendant's domicile and such other districts as are related in particular ways to defendant and his activities. For a non-domicile district to be permissible it must not only be a district in which the defendant has a continuing business presence, but it must also have a relationship to the subject matter of the particular suit.

■ In the context of a statute embodying this intent, the relevant difference between the issue of infringement and the issue here presented is that the issue of infringement is wholly unrelated to the contact of the defendant with the forum district. Where a defendant has engaged in activity in the forum district which arguably infringes plaintiff's patent, he has the kind of contact with the district which the statute contemplates, regardless of whether his acts are ultimately held to have been legally infringing. On the other hand, if a defendant is not in fact responsible for an accused act in the forum district, the contact with that district contemplated by the statute is lacking.

I hold that this case cannot be transferred to the Central District of California because the defendant has failed to carry its burden of demonstrating that this action "might have been brought" in that district. In so holding, I realize that there is an irony inherent in the approach which the Court has taken. A statute intended for the benefit of defendants has been employed in a manner which frustrates the defendant's effort to have the matter tried in a forum which it deems to be more convenient. This anomaly, however, is inherent in the construction given to the transfer statute in Hoffman v. Blaski, 363 U.S.

---

18. Some courts appear to have taken the view that an allegation of defendant's responsibility for an accused act in the forum district satisfies the requirements of the venue statute. *See, e. g.,* Penntube Plastics Co. v. Fluorotex, Inc., 336 F.Supp. 698, 701 (D.S.C.1971); Appleton v. Ronson Service, Inc., 297 F.Supp. 868, 869 (N.D.Ill.1968). Others have referred to this issue as a ven-ue issue but have deferred determination of it until after trial. See, *E. g.,* Vibber v. United States Rubber Co., 255 F.Supp. 47 (S.D.N.Y.1966). Still others suggest that the issue should be determined before litigation of the merits. *See, e. g.,* Hazeltine Corp. v. General Electric Co., 19 F.Supp. 898 (D.Md.1937) (semble). .

335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). I recognize also that this holding places defendant on the horns of a dilemma: under the view here taken, it cannot establish a condition precedent to transfer without conceding one of its defenses on the merits. This, however, seems to be inherent in the Congressional approach of incorporating the patent venue statute within the transfer statute.

A possible solution for defendant would be to request prompt severance and litigation of the issue of its responsibility for the acts of Hollywood and, if it is found to be so responsible, to renew its motion for transfer. If such a severance is requested, the Court will, of course, hear plaintiff with regard to its appropriateness.

### III. PLAINTIFF'S OTHER MOTIONS.[19]

Plaintiff urges that this Court enjoin the prosecution of a declaratory judgment action initiated by Cal Custom in the Central District of California which is said to pose the same issues as the present case. Cal Custom is not yet before this Court, however, and I am unwilling on the present record to accept plaintiff's suggestion that Orion and Cal Custom be treated "as one."

With regard to attorneys' fees, it does not appear that defendant's confusing affidavits have caused plaintiff's counsel to undertake any action not otherwise necessary. Accordingly, plaintiff's request for attorneys' fees will be denied.

One further word is in order. Orion's briefs suggest in passing that this action, if not transferred, should be stayed in favor of the California action. Orion did not move to stay this case, however, and FunnelCap understandably did not address the issue in its brief. Accordingly, the Court has not considered the stay question.

Submit order.

---

19. It follows from that which has heretofore been said that defendant's motion to dismiss for lack of jurisdiction must be denied.