CLOPAY CORPORATION, a corporation of the State of Maryland, Plaintiff,

v.

NEWELL COMPANIES, INC., a corporation of the State of Delaware, Defendant.

CLOPAY CORPORATION, a corporation of the State of Maryland, Plaintiff,

v.

GRABER INDUSTRIES, INC., a corporation of the State of Delaware, Defendant.

Civ. A. Nos. 81–110, 81–124.

United States District Court, D. Delaware.

Nov. 23, 1981.

William J. Wier, Jr., of Bader, Dorsey & Kreshtool, Wilmington, Del., of counsel; David J. Josephic, and J. Robert Chambers, of Wood, Herron & Evans, Cincinnati, Ohio, for plaintiff.

E. Norman Veasey, and Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Del., of counsel; James G. Staples, of Baker & McKenzie, Chicago, Ill., for defendant Newell Companies, Inc.

Januar D. Bove, Jr., of Connolly, Bove & Lodge, Wilmington, Del., of counsel; Walther E. Wyss, Robert L. Rohrback, and Joseph Krieger, of Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill.; Vernon J.

Pillote, Rockford, Ill., for defendant Graber Industries, Inc.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

### I. BACKGROUND

In March of 1981, Clopay Corporation ("Clopay") filed suit against Newell Companies, Inc. ("Newell") and against Graber Industries, Inc. ("Graber"). Both suits allege infringement of patents held by Clopay and relating to adjustable window shades. The patents in dispute in these cases disclose features by which customers can themselves adjust the shades to fit their windows. Until recently, it has apparently been necessary to have manufacturers or retailers cut the shades to appropriate widths through a rather cumbersome and expensive process.

In each suit, Clopay alleges infringement of its Patent No. 4,102,384 ('384). In addition, in its complaint against Graber, Clopay alleges infringement of Patent No. 4,102,-383 ('383). In each case, Clopay has requested a jury trial.

Both Graber and Newell have moved to have the suits transferred. In May of 1981, Graber moved for transfer to the Western District of Wisconsin. In June, Newell moved that the suit against it be transferred to the Northern District of Illinois. Clopay opposes both motions. In late August of 1981, Clopay moved to consolidate the two cases and keep them in this Court.

Both Newell and Graber are incorporated in Delaware. Clopay is a Maryland corporation. Newell's principal place of business is at Freeport, Illinois in the Western Division of the Northern District of Illinois. Newell does not have offices or manufacturing or sales facilities in the State of Delaware.[1] Graber's principal place of

business is in Middleton, Wisconsin; it has no sales or business offices in Delaware.[2] Clopay's corporate headquarters are in Cincinnati, Ohio.

The Court heard simultaneous arguments on the two transfer motions and the motion to consolidate. The parties submitted post-argument memoranda. This opinion represents the Court's findings and conclusions with regard to all three motions.

### II. CLOPAY'S MOTION TO CONSOLIDATE

Clopay's motion to consolidate the two suits seems, at first glance, likely to promote the most efficient solution of these disputes. Given that both involve customer-adjustable window shades and both allege infringement of the '384 patent, the two cases appear quite similar. In many ways they are.

They differ, however, in one respect that may well be material to their outcomes. In its suit against Graber, Clopay has alleged infringement of a second patent, the '383 patent. While this fact would not be particularly salient were the cases being tried to the Court, it takes on additional significance in light of the fact that Clopay has requested juries in both cases. Juries in patent cases are frequently called upon to weigh extraordinary volumes of complex material. In such situations, it may not be reasonable to expect a jury to screen out, in its deliberations regarding one defendant, evidence it has been instructed to consider with respect to another defendant. In short, the interests of justice in these cases may dictate separate trials to different juries.[3]

The possibility that separate trials would be necessary diminishes the likelihood that consolidation in this District represents the most efficient approach to these cases. Al-

---

1. Affidavit of Robert F. Gilbert at 2; Exhibit B, Appendix to Newell's Opening Brief in Support of Motion to Transfer.

2. Affidavit of Kent V. Anderson at 2; Memo in Support of Graber's Motion to Transfer.

3. It is unlikely that the Court will be able to determine finally whether separate trials are called for until discovery has been pursued further than it has been to date. Thus, the Court does not imply that the cases will require separate trials, only that they might.

though it would be possible to consolidate the cases for purposes of discovery only, the advantages of so doing would be limited by the fact that, as discussed below the Court expects that the bulk of discovery will be conducted in the mid-West. Judicial efficiency and the interests of justice are unlikely to be best served by structuring the cases in a way that requires that any disputes relating to discovery—disputes likely to arise in Illinois, Ohio or Wisconsin—be resolved in Wilmington.

■ Clopay has failed to persuade the Court that consolidation in this District represents the most efficient use of judicial resources or would reliably tend to avoid unnecessary costs or delay. *See* Rule 42(a), F.R.Civ.P.

### III. MOTIONS TO TRANSFER

Venue in patent infringement cases is governed solely and exclusively by 28 U.S.C. § 1400(b). *Fourco Glass Co. v. Transmirra Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957). *See Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961). Consequently, in evaluating Newell's and Graber's motions to transfer under 28 U.S.C. § 1404, the Court must apply § 1400 to those aspects of the transfer decision which apply to venue. By virtue of their incorporation here, both Graber and Newell "reside" in Delaware for purposes of § 1400(b). *Dual Manufacturing & Engineering v. Burris Industries, Inc.*, 531 F.2d 1382 (7th Cir. 1976); *Devex Corp. v. General Motors Corp.*, 263 F.Supp. 17 (D.Del.1967).

#### A. *Convenience to Parties and Witnesses*

These suits have their "center of gravity" in the mid-West. Though none of the three corporations involved is incorporated in the mid-West, they are all headquartered in either Illinois, Ohio or Wisconsin. Clopay does not allege any contact with Delaware. Newell and Graber allege that they have no contact beyond incorporation here.

By contrast, all three corporations have extensive production and sales facilities in one or more of Ohio, Illinois and Wisconsin. Marketing, research, and warehousing facilities, as well as all executive offices, are closer to Chicago than they are to Wilmington. The parties' principal attorneys are from Cincinnati and Chicago. Every potential witness that has been brought to the attention of this Court is a resident of either Illinois or Wisconsin. Newell and Graber argue that the prolonged absence of any of these proposed witnesses would seriously disrupt the conduct of their respective businesses. All of the documents likely to be crucial to both discovery and trial are located in Ohio, Illinois or Wisconsin. None of these documents are in Delaware.

■ In opposition to Newell's and Graber's arguments and evidence of serious inconvenience to parties and witnesses, Clopay offers little but a recitation of the weight that should be accorded plaintiff's choice of forum. While this Court acknowledges and follows the holding of *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), *cert. denied* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971), upon which Clopay's argument primarily relies, it recognizes its obligation to decide each case on its own merits. *Shutte* did not hold that plaintiff's choice of forum was *conclusive* so long as venue was proper. To do so would be to collapse any difference between Sections 1404 and 1406. The preference in favor of plaintiffs' choice of forum is not adopted blindly or without reason. Courts expect that plaintiffs' choices will generally reflect their rational and legitimate concerns, including convenience to themselves and their witnesses. Where, as here, plaintiff is not litigating on his "home turf," the convenience of his chosen forum is often reduced. In such situations, the "quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer"[4] is concomitantly reduced. *See Pall Corp. v. Bentley Labs, Inc.*, 523 F.Supp. 450 (D.Del. 1981); *E. I. du Pont de Nemours v. Diamond Shamrock*, 522 F.Supp. 588 (D.Del. 1981).

---

4. *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822–23 (D.Del.1976).

■ Clopay has offered no substantive reasons, independent of its motion to consolidate, discussed above, indicating that the convenience to it of litigating in Delaware even approaches the inconvenience which trial in this forum would impose on the defendants and their witnesses. The only factor weighing in favor of retaining these cases in Delaware is the possible judicial efficiency represented by consolidation. That argument did not carry the day here, however, and the Court holds that defendants Newell and Graber have sufficiently demonstrated inconvenience to themselves and their witnesses to warrant transfer out of the District of Delaware.

## IV. TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS

Although Clopay has failed to persuade the Court that consolidation in the District of Delaware represents a sound approach to these cases, and the Court has concluded that transfer out of this District is warranted, the possibility remains that significant advantages may attach to having these actions dealt with by one court. This Court does not have enough evidence to conclude firmly that *consolidation* in another district is advisable. The Court will separately transfer each case to the Northern District of Illinois, leaving to its judgment the propriety of consolidating the two actions for discovery or trial.

Newell's motion for transfer requested that the suit against Newell be transferred to the Northern District of Illinois. The

Court grants that motion for the reasons stated above. Graber, however, moved for transfer to the Western District of Wisconsin. The Court does not have before it a formal motion to transfer Clopay's suit against Graber to the Northern District of Illinois.[5]

In its argument against transfer and in favor of consolidation in this District, Clopay questioned this Court's authority to transfer the Graber case to the Northern District of Illinois. It has advanced several reasons for that challenge. The Court will deal with these arguments, and a number of other possible objections to transferring the suit against Graber, in the following subsections.

### A. Sua Sponte Transfers

■ A court's authority to transfer cases under 28 U.S.C. § 1404(a) does not depend upon the motion, stipulation or consent of parties to the litigation. Had Congress intended such a requirement, it could have phrased § 1404(a) just as it phrased § 1404(b). See *Lead Industries, Inc. v. OSHA*, 610 F.2d 70, 79 n.17 (2d Cir. 1979). Section 1404(a) imposes a different standard that narrows the discretion of judges in deciding transfer cases.[6] District Courts may transfer civil actions only to other districts in which those actions "might have been brought."

### 1. Authority

The discretion of district court judges to transfer civil actions on the judges' own motion has been exercised by district courts

5. While there is no formal motion to transfer the suit against Graber to the Northern District of Illinois, it should be noted that Graber has acknowledged the possibility of such an action and has, in both its Memorandum in Response to Plaintiff's Motion to Consolidate of October 23, 1981 and its Supplemental Memorandum of November 5, 1981, expressed its preference for the Northern District of Illinois over the District of Delaware. (Supplemental Memorandum at 4). Because the Court concludes, *infra*, that it may appropriately transfer the suit on its own motion, it will not inquire into whether Graber's arguments and admissions at the November 2, 1981 hearing or in its Supplemental Memorandum constitute a motion to have the suit against it transferred to the Western Dis-

trict of Wisconsin or, in the alternative, to the Northern District of Illinois. See *I–T–E Circuit Breaker Co. v. Becker*, 343 F.2d 361, 363 (8th Cir. 1965). See also F.R.Civ.P. 15(b).

6. In *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), the Supreme Court held that the subsequent consent of parties to waive venue objections did not render proper a transferee district otherwise inappropriate under § 1404(a). *Hoffman* imposes an independent duty upon district court judges in evaluating motions to transfer. See *Commercial Lighting Products, Inc. v. U. S. District Court and Industrial Lighting Products Co.*, 537 F.2d 1078 (9th Cir. 1976).

and accepted by courts of appeals and commentators. *Skil Corp. v. Millers Falls Co.,* 541 F.2d 554, 556–57 (6th Cir. 1976), *cert. denied* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976); *I–T–E Circuit Breaker Co. v. Becker,* 343 F.2d 361, 363 (8th Cir. 1965); *Nation v. United States,* 512 F.Supp. 121, 127 (S.D.Ohio 1981); *Lead Industries, Inc. v. OSHA, supra; National Acceptance Co. of Amer. v. Wechsler,* 489 F.Supp. 642, 649 n. 2 (N.D.Ill.1980); *Riordan v. W.J. Bremer, Inc.,* 466 F.Supp. 411 (S.D.Ga.1979); *Watwood v. Barber,* 70 F.R.D. 1, 9 (N.D.Ga. 1975);[7] 15 Wright & Miller, *Federal Practice and Procedure* § 3844 pp. 208–09 (1976 ed.); 1 Moore, *Federal Practice* ¶ 0.145[1] pp. 1580, 1580 n. 4 (Supp.1981, p. 139). This Court is persuaded that, within the limits imposed by § 1404(a) and general principles of fairness, it has authority to transfer the action against Graber to the Northern District of Illinois.

*2. Procedure*

■ In discussing *sua sponte* transfer authority under § 1404(a), courts[8] and commentators[9] have acknowledged the importance of notifying parties of the possibility of such a transfer. While there is little debate over the authority of district judges to transfer civil actions on their own motion, to do so without affording parties the opportunity to develop and explain positions on such a possible transfer would unnecessarily and unjustly deprive courts of relevant facts and arguments. The criteria for evaluating a § 1404 transfer do not change when it is the Court rather than a party that initiates the motion. The Court must still evaluate the same factors: the convenience of parties and witnesses and the

interests of justice. In deciding to transfer on its own motion, the Court confronts the same preference for plaintiff's choice of forum that a defendant would confront in moving for a transfer.[10] Failure to afford parties adequate notice and opportunity to be heard on a district judge's contemplated *sua sponte* transfer would in most, if not all, cases violate the parties' due process rights. *See Swindell-Dressler v. Dumbauld,* 308 F.2d 267, 273–74 (3d Cir. 1962).

In these actions, all parties have had abundant notice of the Court's interest in the possibility of transferring both suits to a single judicial district closer to the center of the controversy, more convenient to all parties and in a better position than this Court to decide which aspects, if any, of these cases merit consolidation and which require separate treatment. As early as July 16, 1981, in its Reply Brief in Support of its Motion to Transfer, Graber expressed its opinion that "[p]laintiff could have sued the defendants in both suits in the Northern District of Illinois."[11] The Court inquired about Graber's contention at the conference, attended by all parties' counsel, on August 31, 1981 in Wilmington.

Clopay's argument, at the November 5 hearing, that any assertion of the availability of the Northern District of Illinois as an appropriate venue with regard to Graber should be ignored because it arose "at the eleventh hour"[12] is ill-conceived. In addition to its statement in its July 16, 1981 Reply Brief, Graber's answers to interrogatories indicated that it maintained a place of business in the Northern District of Illinois.[13] Moreover, in its brief answering Clopay's motion to consolidate, Graber ar-

---

**7.** *See also Devex v. General Motors,* 263 F.Supp. 17, 23 (D.Del.1967) (discussing a retransfer on the Court's own motion).

**8.** *See Riordan v. W.J. Bremer, Inc.,* 466 F.Supp. 411, 418 (S.D.Ga.1979) *citing Swindell-Dressler Corp. v. Dumbauld,* 308 F.2d 267, 273–74 (3d Cir. 1962).

**9.** *See* 15 Wright & Miller, Federal Practice & Procedure § 3844 p. 209 (1976 ed.).

**10.** *See* text accompanying note 3, *supra.*

**11.** Defendant Graber's Reply Memorandum in Support of its Motion to Transfer, at 4. (C.A. 81–124, Docket Item 16, filed July 16, 1981).

**12.** Transcript of Hearing on Defendants' Motions to Transfer and Plaintiff's Motion to Consolidate, November 2, 1981, at 4. (T–4).

**13.** *See* Responses of Defendant [Graber] to Plaintiff's First Set of Interrogatories at 4 (filed October 26, 1981, Docket Item 24). *See also* Transcript at 6, Statement of Mr. Wier.

gued that the Northern District of Illinois would be more convenient to all parties than would this District, that the case against Graber could have been filed there and that Clopay was already a defendant in a patent suit in the Northern District brought by Newell relating to adjustable window shades.[14] The fact that counsel for Clopay argued against transfer of the two actions to the Northern District of Illinois at oral argument illustrates the adequacy of notice to parties and that they had an opportunity to be heard.

Clopay's further objections to the possibility of transfer to the Northern District of Illinois were substantive and are dealt with below. The Court finds that it has the authority to transfer the suit against Graber to the Northern District of Illinois despite the absence of a formally filed motion to that effect. It further finds that parties have been given notice and hearing adequate both to allow the Court to decide the propriety of transfer and to meet the requirements of due process.

### B. *Venue in the Northern District of Illinois*

■ Section 1400(b) provides that:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

There has been no assertion or argument that Newell, incorporated in Delaware and so not a "resident" of Illinois,[15] does not meet the second prong of the disjunctive standard established by § 1400(b). Newell, which has its corporate headquarters as well as major research, warehousing, and sales operations in the Northern District of

Illinois ("Northern District"), clearly has a "regular and established place of business" within the meaning of the statute. No one has denied that, if Newell has infringed Clopay's patents, it has done so in the Northern District. Thus, there is no doubt that the Northern District is a venue in which the infringement suit against Newell might have been brought under § 1400(b) and therefore one to which it may be transferred under 28 U.S.C. § 1404(a).

With regard to Graber, the situation is less immediately clear and will be examined below.

### 1. *Regular and Established Place of Business*

At the hearing, Clopay questioned whether the facts Graber asserted about its facilities in Bensonville, Illinois—just outside of Chicago—were sufficient to demonstrate "a regular and established place of business." (T–8, 16–18). In response to that contention, the Court requested post-hearing memoranda and affidavits from Graber and permitted both Newell and Clopay an opportunity to respond to them.[16]

Counsel for Clopay, in arguing that Graber had not demonstrated that it maintained an established place of business in the Northern District, relied heavily on *Brevel Products Corp. v. H & B American Corp.*[17] (T–17, 23). Clopay emphasized the standard articulated in *W.S. Tyler Co. v. Ludlow Saylor Wire Co.*[18] and quoted in *Brevel Products*, that sales representatives in a "regular and established place of business" must be able to "consummate" sales. (T–23–24). *Brevel Products*, however, does not stand for the proposition that any particular criterion is paramount in a court's

**14.** Memorandum of Graber Industries, Inc. in Response to Plaintiff's Motion to Consolidate at 2–4 (filed October 23, 1981, Docket Item 22).

**15.** *See Dual Mfg. & Engineering v. Burris Industries, Inc.*, 531 F.2d 1382 (7th Cir. 1976); *L. D. Schreiber Cheese v. Clearfield Cheese Co.*, 495 F.Supp. 313 (W.D.Pa.1980); *Funnelcap, Inc. v. Orion Industries, Inc.*, 392 F.Supp. 938 (D.Del.1975); *Devex Corp. v. General Motors Corp.*, 263 F.Supp. 17 (D.Del.1967).

**16.** *See Catanzaro v. International Tel. & Tel.*, 378 F.Supp. 203, 207 (D.Del.1974).

**17.** 202 F.Supp. 824 (S.D.N.Y.1962).

**18.** 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915).

evaluation of a party's place of business. No single factor is controlling in such an evaluation. Indeed, in *Brevel Products*, the Court said: "There has been no definitive test promulgated by the courts which will determine in each case whether venue is properly laid under § 1400(b). However, examining the facts of each case and the results reached in each case, a pattern can be discerned." [19] Perhaps the most general standard was announced in *Mastantuono v. Jacobsen Manufacturing Co.*[20] in which it was held that a defendant must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." [21]

In *Dual Manufacturing & Engineering Co. v. Burris Industries, supra*, the Court of Appeals held that Burris had a regular and established place of business in the Northern District of Illinois even though it paid its salesman by commission only, directed all its sales through its home office in North Carolina for approval and shipping, and maintained no bank account in Chicago. The Seventh Circuit emphasized the fact that Burris leased and paid rent for its own exclusive and permanent use of an office/showroom. Largely because Burris "had the clear right to exercise control over those premises," [22] the Court held that Burris did have a regular and established place of business in the Northern District.

■ In addition to the facts it presented at oral argument (T–19–23), and those developed in its answers to interrogatories,[23] Graber submitted a post-hearing affidavit in which Mr. Stephen C. Ganshert, Director of Distribution at Graber, described Graber's Bensonville, Illinois facilities. The deposition established a number of facts which confirm the Court's belief that those facilities constitute a regular and established place of business. Among the most salient of those facts are:

1. Graber rents 34,000 square feet of space in Bensonville.

2. Graber has ten full-time employees in Bensonville, including the offices of both the Chicago branch sales manager and the mid-Western sales manager.

3. Sales personnel at the facility accept orders for window shades at the showroom and deliver the shades to customers from inventory maintained at the facility. The "home office" in Wisconsin has no involvement with these sales except in providing centralized invoicing.

These factors, and others adduced in the Ganshert affidavit convince the Court that Graber's facilities in Bensonville meet the standards that have evolved for evaluating a "regular and established place of business" under 28 U.S.C. § 1400(b). Graber's offices and warehouse certainly equal the facilities approved in *Dual Manufacturing, supra*. Moreover, nothing in the *Brevel Products* opinion counsels against accepting the Bensonville facility as an established place of business.

*2. Acts of Infringement*

■ To meet the venue standards of § 1400(b), non-resident defendants must not only have a "regular and established place of business" but must also be alleged to have "committed acts of infringement" within the judicial district. Here there is no direct allegation of infringement by Graber within the Northern District of Illinois. Based on the record before it, however, the Court finds that, if Graber has infringed Clopay's patents, it has done so in the Northern District.

---

19. 202 F.Supp. at 827.

20. 184 F.Supp. 178 (S.D.N.Y.1960).

21. *Id.* at 180. *See L.D. Schreiber Cheese Co. v. Clearfield Cheese Co., supra* note 12; *IPCO Hospital Supply Corp. (Whaledent Int'l. Div.) v. Les Fils D'Auguste Maillefer S.A.*, 446 F.Supp. 206, 208 (S.D.N.Y.1978) (*quoting Mastantuono, id.*).

22. *Dual Mfg. & Eng. Co. v. Burris Indust.*, 531 F.2d 1382, 1388 (7th Cir. 1976). Note the selection of the "control" aspect of the test announced in *Mastantuono, supra* note 17.

23. *See* note 10 *supra*.

Graber's Bensonville facilities are constantly involved in the sale of the accused devices. The warehouse maintains an inventory of the accused shades valued at approximately $120,000.[24] Those shades are sold to customers on a regular basis. Such sales should, then, meet the test of 35 U.S.C. § 271 which defines acts of patent infringement in terms of "whoever without authority makes, uses or sells any patented invention." While some courts have examined the question of what volume of sales is required within a judicial district to make it a proper venue for an infringement action, there is no doubt that Graber's activities in the Northern District meet those standards.[25] Graber has clearly "engaged in activity in the forum district which arguably infringes plaintiff's patent [and so] has the contact with the district which the statute contemplates."[26]

The Court finds that Graber's Bensonville facility meets the standards of 28 U.S.C. § 1400(b) and so qualifies the Northern District of Illinois as one in which the infringement action against Graber "might have been brought." Transfer to the Northern District is proper.

### 3. *Divisions within the Northern District*

Newell's principal place of business at Freeport, Illinois is located in the Western Division of the Northern District of Illinois ("Western Division"). Graber's Bensonville facilities are in the Eastern Division of the Northern District of Illinois ("Eastern Division"). From these facts and the requirements of § 1400(b), Clopay infers that the two cases cannot be consolidated in any district other than the District of Delaware. Clopay fails to read § 1400(b) as the "sole and exclusive provision controlling venue in patent infringement actions."[27] Because § 1400(b) controls the standard of where they "might have been brought," the actions against Graber and Newell may be transferred to the Northern District of Illinois without addressing them to one or the other division of that District. Section 1400(b) does not mention divisions; it specifies only that a civil action may be brought in a judicial *district*. This has been interpreted to permit transfer to a given judicial district without attention to divisions. *See Technograph Printed Circuits Ltd. v. Packard Bell Electronics Corp.*, 290 F.Supp. 308, 323–326 (C.D.Cal.1968); *see* 15 Wright & Miller, *Federal Practice & Procedure* § 3823 p. 139 (1976 ed.). This Court concurs in the analysis in *Technograph Printed Circuits* and finds that 28 U.S.C. § 1393 does not apply to patent infringement cases. The Court chooses to be as consistent as possible in applying § 1400(b) as the *unique* provision controlling proper venue in these cases. In so doing, this Court follows the Supreme Court's statement in *Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972) that "Congress placed patent infringement cases in a class by themselves, outside the scope of general venue legislation."[28] This Court agrees that "the language of [§ 1400(b)] is clear and specific.... [F]or us to enlarge upon the mandate of the Congress as to

---

**24.** Affidavit of Stephen C. Ganshert, p. 2, ¶ 7.

**25.** *See Dual Mfg. & Eng., supra*, finding acts of infringement where there was "a systematic and continuous solicitation of orders, a large showroom ... and demonstrations of the accused product" within the Northern District of Illinois. Relying on its 1964 opinion in *Union Asbestos & Rubber Co. v. Evans Prod. Co.*, 328 F.2d 949 (7th Cir. 1964), the 7th Circuit seems not to require proof of actual sales so long as orders are solicited and the accused product constantly demonstrated. Here, where the sales process is almost completely controlled at the local facility, there can be no doubt that the alleged acts of infringement have met the ven-

ue standards, not only of the 7th Circuit, but of other jurisdictions as well. *See Ingersoll-Rand Co. v. Rockwell Int'l Corp.*, 420 F.Supp. 277 (S.D.Fla.1976); *Funnelcap, Inc. v. Orion Indust., Inc.*, 392 F.Supp. 938 (D.Del.1975); *Watsco, Inv. v. Henry Valve Co.*, 232 F.Supp. 38 (S.D.N.Y.1964).

**26.** 392 F.Supp. at 943.

**27.** *Fourco Glass Co. v. Transmirra Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957).

**28.** 406 U.S. at 713, 92 S.Ct. at 1940.

venue in such patent actions would be an intrusion into the legislative field."[29]

## V. CONCLUSION

The Court holds that Clopay's suits against Newell and Graber will be individually transferred to the Northern District of Illinois for the convenience of the parties and witnesses and in the interests of justice.

So Ordered.

---

**29.** *Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 262, 81 S.Ct. 557, 560, 5 L.Ed.2d 546 (1960).