Frank BANKS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Garfield C. EBANKS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

George L. EBANKS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

William J. EDWARDS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Peter W. GEORGOPOULOS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Ezell MAYS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Lawrence B. ROBERTSON

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Charles E. SATTERFIELD

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

James TRIPP, Jr.

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

James L. WEARREN

v.

MARINE NAVIGATION SULPHUR

CARRIERS, INC.

Henry J. WELLS

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

James E. WHEELER

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Dennis WILSON

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Gayle YOUNG

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

John C. ZBIEGLIEN

v.

MARINE NAVIGATION SULPHUR CARRIERS, INC.

Civ. A. Nos. 77–829, 77–830, 77–832, 77–833, 77–835, 77–839, 77–840, 77–841, 77–844, 77–845, 77–846, 77–847, 77–848, 77–850 and 77–851.

United States District Court,
E. D. Pennsylvania,
Civil Division.

March 19, 1982.

Marvin Barish, Robert Wolin, Adler, Barish, Levin & Creskoff, Philadelphia, Pa., for plaintiffs.

Dante Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER TRANSFERRING CASES PURSUANT TO 28 U.S.C. § 1404(a).

EDWARD R. BECKER, District Judge.[*]

On the morning of February 24, 1977 the S/T Marine Floridian sailed from the Allied Chemical Corporation dock at Hopewell, Virginia bound for Newport News, Virginia and sea. At approximately 0657 hours on that day, the vessel collided with the Benjamin Harrison Memorial Bridge on the James River near Hopewell, Virginia. The plaintiffs in this case were merchant seamen aboard the vessel. A common claim of

[*] Of the United States Court of Appeals for the Third Circuit, sitting by designation.

the plaintiffs (and for most of them their only claim) is that of mental distress or psychic injury resulting from the scary scene that followed the collision.[1]

The above-captioned complaints along with eight others were filed in this court on March 8, 1977, some twelve days after the collision. On March 24, 1977, the defendant Marine Navigation Sulphur Carriers, Inc., along with Marine Transport Lines, Inc. as owners and operators of the S/T Marine Floridian, filed a complaint in the United States District Court for the Eastern District of Virginia, Norfolk Division, for exoneration from or limitation of liability. At that time, the court entered an order, or monition, enjoining the commencement of prosecution of any actions or suits of any nature against the owners and operators of the S/T Marine Floridian. On May 13, 1977, the plaintiffs in the above-captioned actions filed claims for their injuries in the exoneration/limitation case.

The case came on for trial, and, in an order filed August 21, 1978 Judge Kellam concluded that the Marine Floridian was not seaworthy and was guilty of negligence which was the sole proximate cause of the collision and damage to the bridge. Judge Kellam ordered that the owner was not entitled to exoneration or limitation of liability (nor entitled to indemnity or contribution). The liability aspect of the matter was, thus, concluded against the owners and operators of the S/T Marine Floridian, and, on January 21, 1980 an order was entered by the exoneration/limitation court appointing a special master to hear the claims with respect to damages.

There were, of course, numerous claimants. However, those claimants who were before this court, desiring to pursue their claims for damages here, filed, on February 29, 1980, a petition to lift the monition which was granted on March 27, 1980. However, Judge Kellam, in granting the motion, remarked:

"Lifting the Monition and permitting claimants to prosecute their claims in the District Court for the Eastern District of Pennsylvania may be a useless act, for that Court may transfer the case here under 28 U.S.C. § 1404, for the convenience of the parties and witnesses, as the accident occurred here, much litigation dealing with the claims has been dealt with by this Court, and it would appear a conservation of judicial time and energy might require the . . . claims to be heard and disposed of here."

On May 16, 1980 an order lifting the monition was entered.

The parties returned here and on October 23, 1980, defendant filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer the action to United States District Court for Eastern Virginia. The motion was later amended, at our suggestion, to include an alternative prayer to transfer the action to the three districts where the plaintiffs and their families resided and where they had obtained medical treatment: the Eastern District of Texas, the Western District of Louisiana, and the Middle District of Florida. We held several hearings with respect to the motions and have received extensive submissions from counsel. During this period, we also embarked upon a settlement mediation program and eight of the twenty-three cases originally before us have been settled. The remaining fifteen cases are addressed in this memorandum and order.

As the papers of counsel conclusively demonstrate, the plaintiffs and these cases have no contacts with this district other than the fact: (1) that plaintiffs' attorney practices here, and (2) the plaintiffs have been evaluated by a psychiatrist here for the purpose of trial testimony as to their psychic injury. As has been developed by defendant's papers, all of the actual medical care received by plaintiffs pertinent to their claims took place in Virginia after the accident, or in the vicinity of their homes in Texas, Louisiana, and Florida. Defendant

---

1. The plaintiffs have alleged that they suffer from such symptoms as nervousness, fear, irritability, excitability, headaches, insomnia, fatigue, decrease in appetite, decrease in sexual drive, vomiting, nausea, and dizziness.

has represented that, in view of the subjective nature of the plaintiffs' claims, that it expects to call as witnesses plaintiffs' friends, associates and family members, and physicians who treated them both prior to and following the James River Bridge collision. Defendant has supported this position with a detailed summary of the injuries claimed by each plaintiff, the available history of treatment since the collision, and an identification, where possible, of witnesses to be called.

Title 28, U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division or it might have been brought.

It is not disputed that this action might have been brought in the districts of Eastern Virginia, Eastern Texas, Western Louisiana or Middle Florida. It is clear beyond peradventure that neither the convenience of the parties and witnesses nor the interests of justice are served by the case being tried in this district. The presence of plaintiffs' attorney here is irrelevant.[2] And the plaintiffs' choice of forum is entitled to less weight because none of them are residents of Pennsylvania, *see Mitchell v. National R.R. Passenger Corp.*, No. 81–3271, slip op. at 4 (E.D.Pa.1982) (Pollak, J.); and because the underlying cause of action has no connection with this forum; *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 177 (E.D.N.Y. 1979).

When we balance the relevant factors under Section 1404(a) we conclude that whatever weight is to be accorded plaintiffs' place of forum, it is strongly overridden by the other relevant factors. Accordingly, the cases must be transferred. The only serious question that we face is the determination of the appropriate district to which to transfer them.

Defendant's submissions would certainly support the transfer of the cases to each of the plaintiffs' home districts.[3] We are concerned, however, that the cases might go to the bottom of the calendar in the transferee district, and, in any event, that dispersion of these already old cases would further delay their final disposition. In contrast, we believe that transfer of these cases to the Eastern District of Virginia would strongly enhance the possibility of their early disposition. The Eastern District of Virginia is where the cases arose. That court is familiar with the litigation and has appointed a special master to expedite resolution of the claims. That court is a most capable one, and Chief Judge MacKenzie has indicated to us his willingness to have the cases processed under the aegis of that court. Moreover, given the size of the cases, our experience leads us seriously to doubt that a trial of these cases will involve a large number of witnesses from the home districts. Discovery has been ongoing and can continue in Eastern Texas, Western Louisiana, and Middle Florida as is necessary, but Norfolk is probably more convenient for trial of the action for all of the parties concerned, including attorneys and witnesses, than any place else. Certainly it is far more convenient than Philadelphia.

We, therefore, enter an order transferring these cases to the United States District Court for the Eastern District of Virginia.

---

2. The law is well settled that convenience of counsel is not a factor to be considered in a motion to transfer. *Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043 (3d Cir. 1973).

3. Under this approach, three cases (Garfield Ebanks, George Ebanks, and John Zbieglien) would be transferred to Middle Florida; one case (Ezell Mays) would be transferred to Western Louisiana; and the remaining cases would be transferred to Eastern Texas.