**SPORTS EYE, INC., Plaintiff,**

v.

**DAILY RACING FORM, INC.; Hollywood Park Operating Company; and Hollywood Park Realty Enterprises, Inc., Defendants.**

Civ. A. No. 83–43.

United States District Court,
D. Delaware.

May 26, 1983.

Rudolf E. Hutz, and James M. Mulligan, Connolly, Bove & Lodge, Wilmington, Del. (Alan J. Davis, Robert C. Podil, Roberta D. Liebenberg, and Barry M. Klayman, of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., of counsel), for plaintiff.

William Prickett, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (Harold E. Kohn, Samuel E. Klein and Barbara A. Podell, of Kohn, Savett, Marion & Graf, Philadelphia, Pa., of counsel), for defendant, Daily Racing Form, Inc.

Richard L. Sutton, and Marguerite A. Conan, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., of counsel), for defendants, Hollywood Park Operating Co. and Hollywood Park Realty Enterprises, Inc.

OPINION

CALEB M. WRIGHT, Senior District Judge.

The plaintiff, Sports Eye, Inc. (hereinafter "SEI"), filed this action on January 26, 1983 against three defendants, Hollywood Park Operating Company (hereinafter "HPOC"), Hollywood Park Realty Enter-

prises, Inc. (hereinafter "Realty"), and the Daily Racing Form, Inc. (hereinafter "DRF"). The plaintiff seeks damages and injunctive relief based upon alleged violations by the defendants of the Sherman Act, 15 U.S.C. §§ 1, 2. The plaintiff also seeks damages and injunctive relief based upon the defendants' alleged tortious interference with the plaintiff's prospective contractual relations with Emil T. Jones & Associates, Inc. Jurisdiction is based upon 15 U.S.C. §§ 15, 26 and 28 U.S.C. § 1337, with respect to the federal antitrust claims. With respect to the state law tort counts, jurisdiction is based upon 28 U.S.C. § 1332 (diversity of citizenship), and pendent jurisdiction. Venue is predicated upon 15 U.S.C. § 22 and 28 U.S.C. § 1391(c).

The plaintiff, SEI, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Port Washington, New York. The plaintiff is engaged in, *inter alia,* the collection, publication, and sale of thoroughbred horse racing news. The defendants, DRF, HPOC, and Realty are all Delaware corporations. DRF has its principal place of business in Los Angeles, California, and is primarily engaged in the publication of thoroughbred horse racing information. HPOC's principal place of business is Inglewood, California, where it operates Hollywood Park racetrack. Realty also has its principal place of business in Inglewood, California, and it also is involved in the operation of Hollywood Park.

DRF is the owner and publisher of the Daily Racing Form which is published daily and contains news relating to the sport of thoroughbred racing, including detailed race charts and past performances for hors-

es in upcoming races. The Daily Racing Form is the preeminent publication of its kind, and until 1976 DRF had no direct competition. In 1976, SEI began its own publication, Sports Eye, concerning thoroughbred racing news, including previous race performances for horses in upcoming races. In order to provide this information, SEI employed chart callers and chart takers at most major racetracks within the United States to collect the necessary information.[1]

In September, 1982, SEI desired to expand its operations and begin the collection of racing information at Hollywood Park, located in Inglewood, California. To this end, SEI approached HPOC and/or Realty (hereinafter collectively referred to as "Hollywood Park"), in order to obtain press credentials and press box space in Hollywood Park for Jay Woodward, a chart caller employed by SEI.[2] For reasons not clearly specified in the current record before the Court, Hollywood Park refused to issue SEI or Woodward either press credentials or press box space.[3]

Despite its inability to obtain either press credentials or press box space, SEI persisted in its efforts to chart the races at Hollywood Park. First, SEI, through its employee Woodward, attempted to chart the races at locations other than the press box. Second, SEI entered into contract negotiations with Emil T. Jones & Associates, Inc. (hereinafter "Jones"), whereby Jones agreed, *inter alia*, to provide the plaintiff with photo-finish results for races at Hollywood Park for the same fee charged by Jones to DRF. This photo-finish information was necessary for SEI to chart the races accurately.

---

1. SEI employed chart callers at Santa Anita (California), Aqueduct (New York), Belmont Park (New York), Saratoga (New York), Monmouth Park (New Jersey), The Meadowlands (New Jersey), Atlantic City Race Course (New Jersey), Delaware Park (Delaware), Keystone (Pennsylvania), Suffolk Downs (Massachusetts), Calder Race Course (Florida), Penn National (Pennsylvania), the Maryland Race Courses (Laurel, Pimlico, Bowie, Timonium), Latonia (Kentucky), Churchill Downs (Kentucky), and Keeneland (Kentucky). Cohen Letter to Nathaniel B. Wess (September 30, 1982).

The only prominent tracks not covered by SEI appear to be Hollywood Park (California), Oaklawn Park (Arkansas), the Fairgrounds (Louisiana), Louisiana Downs (Louisiana), Hialeah (Florida), Gulfstream Park (Florida), and various tracks in Chicago, Illinois, Northern California, and Canada.

2. Cohen Letter to Nathaniel B. Wess (September 30, 1982).

3. *See* Shankman Letter to Marjorie L. Everett (October 22, 1982).

Hollywood Park's response to SEI's persistent efforts to chart Hollywood Park races was not favorable. On November 2, 1982, Marjorie L. Everett, Chief Operating Officer of HPOC, sent a letter to Jack Cohen, President of SEI. The text of the letter is found in the record (Dkt. 30 Appendix) and reads as follows:

Dear Mr. Cohen:

This is to advise you that contrary to your letter, no calls will be allowed to be made by you or your representatives inside or outside the grounds that would be used for the dissemination of any racing or other information from Hollywood Park.

We feel very strongly about the distribution of race results from Hollywood Park and we shall at all times adhere to the Rules and Regulations under which we operate.

We further reserve the right to operate Hollywood Park according to the highest standards and in the manner which we feel is in the best interest of our company.

Contrary to the statement in your letter, neither you or Mr. Jay Woodward makes the decisions for Hollywood Park and under no circumstances will you or your representatives be permitted to make calls of the races at Hollywood Park from, as you stated, a convenient location inside the race track.

Chief Jay R. Stroh, Hollywood Park's Director of Security, will take whatever appropriate or necessary actions [sic] to eliminate any illegal or unauthorized activity occurring on any part of our property.

Mr. Ron Fazio of Photo-Chart-Camera (i.e., Jones) is not employed by Hollywood Park.[4] No one who is under contract to Hollywood Park or employed by us will be permitted to sell or give to you any material pertaining to the conduct of racing during our meeting.

The audacity and presumptuousness of your position only further documents our decision to not let you operate in any fashion at Hollywood Park.

On or about November 7, 1982, Jay R. Stroh, Chief of Hollywood Park Security, became fully aware that Jay Woodward of SEI was calling races from the Hollywood Park Turf Club, a private club at the racetrack.[5] Stroh enforced the November 2, 1982 directive of Marjorie L. Everett and stopped Woodward from charting the races.[6]

■ Subsequently, SEI filed this suit against the instant defendants. The gravamen of the plaintiff's complaint, as distilled from oral argument, is that Hollywood Park has wrongfully precluded SEI from charting the Hollywood Park races. To this end, SEI first claims that Hollywood Park and DRF have conspired and combined in violation of the Sherman Act to prevent SEI from collecting necessary information at Hollywood Park so that the plaintiff will not be able to compete with DRF in its distribution of thoroughbred horse racing news. The antitrust claim, however, is ancillary to the main pendent state law claim which is that Hollywood Park tortiously interfered with the prospective contract that SEI had with Jones.[7] DRF, in turn, has counterclaimed against SEI, in essence alleging that SEI has appropriated copyrighted information from the Daily Racing Form for use in Sports Eye. Currently before the Court are the defendants Motions to Transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district

---

4. It should be noted, however, that Fazio's company, Jones, had a contract with Hollywood Park to provide photo-finish services.

5. Affidavit of F.B. Yoakum, Jr. (Dkt. 33), ¶ 4 at 4–5.

6. *Id.* at 5.

7. At oral argument, plaintiff's counsel conceded that the state law claims were of greater significance than the antitrust claims.

court may transfer any civil action to any other district or division where it might have been brought.

Under the perimeters of Section 1404(a), a civil action may be transferred to another district where the action could have been brought if the Court, in its discretion finds that a transfer would be more convenient for the parties and witnesses, or that the interests of justice would be served by such a transfer. *Pall Corp. v. Bentley Laboratories, Inc.*, 523 F.Supp. 450, 451 (D.Del.1981). As a threshold matter, the Court finds that this action could have been brought in the Central District of California, and the parties do not contest this issue.[8] Consequently, the Court has the power to transfer this action, and the only question is whether in its discretion it should do so under the standards set forth in 28 U.S.C. § 1404(a).

## I. CONSIDERATION OF THE SECTION 1404(a) FACTORS

### A. *Convenience of the Parties and Witnesses*

The United States Court of Appeals for the Third Circuit has established the following principles to be followed on a motion to transfer:

It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ". . . should not be lightly disturbed." In accord with that sound doctrine, one district court recently observed: "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." The burden is on the moving party to establish that a balancing of proper interests weigh in favor of a transfer, and ". . . unless the balance of convenience of the parties is *strongly* in favor of defend-

ant, the plaintiff's choice of forum should prevail."

*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) (citations omitted) (emphasis in original), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Consequently, under *Shutte*, the plaintiff's choice of forum should be honored unless the defendant can demonstrate that a consideration of the factors set forth in Section 1404(a) strongly suggest that transfer is favored. *See General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822 (D.Del. 1976).

Nevertheless, even though the plaintiff's choice of forum should not easily be disturbed, it is recognized that where the plaintiff has not brought suit on its "home turf", the convenience to the plaintiff of litigating in its chosen forum is not as great as it would be were it litigating at or near its principal place of business, or at the site of the activities at issue in the lawsuit. *Clopay Corp. v. Newell Companies, Inc.*, 527 F.Supp. 733, 736 (D.Del.1981); *Pall Corp. v. Bentley Laboratories, Inc.*, 523 F.Supp. 450, 452 (D.Del.1981); *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822–23 (D.Del.1976). Consequently, in a situation where the plaintiff is not on its "home turf", the "quantum of inconvenience to defendant needed to tip the balance in favor of transfer is concomitantly reduced." *Clopay Corp.*, 527 F.Supp. at 736, *quoting General Instrument Corp.*, 417 F.Supp. at 822–23.

In the present case, Delaware is not SEI's "home turf." SEI is a New York corporation with its principal place of business in Port Washington, New York.[9] SEI's principal business activity is the publication of Sports Eye, which is distributed almost exclusively in the greater New York

---

**8.** There is no question that the Central District of California is a proper forum for this action under the venue provisions governing this case. *See* 15 U.S.C. § 22 and 28 U.S.C. § 1391(c). These two venue statutes provide that an action properly may be brought in any district in which the defendants are found or in which they transact business. All three defendants have their principal offices within the Central District of California, either in Los Angeles or

in nearby Inglewood. Consequently, venue is proper in the Central District, and defendants are subject to service of process there. Under such circumstances, this action clearly could have been brought in the proposed transferee Court.

**9.** Port Washington is located on Long Island.

area.[10] There is little or no circulation of Sports Eye in Delaware,[11] and SEI is not licensed to do business within this State.[12] Furthermore, it appears that SEI does not have any employees or agents operating in Delaware.[13] Therefore, the Court finds that the plaintiff has little or no connection with Delaware, and consequently, the amount of inconvenience that the defendants must demonstrate before transfer is granted is reduced. *Clopay Corp.*, 527 F.Supp. at 736.

In considering the balance of convenience between the parties, it is apparent from the record that the Central District of California (hereinafter "Central District" or "California court"), is a far more convenient forum for the defendants than Delaware. As previously stated, all three defendants' principal places of business are located within the Central District. Consequently, most, if not all, of the defendants' officers and directors are located in California. Some of these people most notably Michael Sandler, President of DRF, and Marjorie L. Everett, Chief Operating Officer of HPOC, will in all likelihood by key figures at trial, particularly with reference to the conspiracy claims. Consequently, attendance at trial in Delaware would entail a considerable loss of time from work for key management personnel of the defendants.[14] Therefore, the Court finds that the Central District is a much more convenient forum for the party defendants.

In addition, it is clear from the record that the site of the defendants' alleged wrongful conduct was California.[15] Consequently, this litigation has its "center of gravity" in California. Because this litigation has its "center of gravity" in California, the majority of relevant documents pertaining to this litigation are in California.[16] In addition, the vast majority of the defendants' proposed witnesses live in California, generally in and around Los Angeles. In a detailed affidavit, the defendants have submitted a list of numerous proposed witnesses whose testimony may be relevant at trial.[17] Some of these proposed witnesses may not be able to testify if trial is held in Delaware.[18] Furthermore, the cost of transporting these witnesses would be substantial.[19] Consequently, the Court finds that the defendants have adequately demonstrated that California is the center of gravity in this case and that it is a far more convenient forum for many of the witnesses.

A transfer cannot be granted, however, simply because the proposed transferee court is more convenient for the defendants. If the transfer would merely shift the burden of inconvenience to the plaintiff, the transfer should not be allowed. *See Van Dusen v. Barrack*, 376 U.S. 612, 645–46, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1964). The plaintiff contends that the present case falls within this category, and that a transfer simply would shift the burden of inconvenience to it. The Court cannot agree.

In opposition to the defendants' arguments and evidence of serious inconvenience to parties and witnesses, SEI offers little but a recitation of the weight that should be accorded the plaintiff's choice of forum. Although the Court acknowledges this factor, as previously stated, the choice of forum factor is of diminished importance where, as here, the plaintiff is not litigating on its "home turf". In spite of this, SEI

10. Affidavit of Michael Sandler, (Dkt. 14), ¶ 5 at 3.

11. *Id.*

12. Affidavit of Barbara A. Podell, (Dkt. 13), ¶ 2 at 1–2.

13. Dkt. 14, ¶ 5 at 3.

14. Affidavit of Marjorie L. Everett (Dkt. 22), ¶ 10 at 4; Affidavit of Michael P. Sandler (Dkt. 14), ¶ 12 at 5–6.

15. *See* pp. 635–636, *supra.*

16. *See* Dkt. 22, ¶ 11 at 4. The location of relevant documents, although not a critical factor, is to be considered on a motion to transfer. *See, e.g., Clopay Corp.*, 527 F.Supp. at 736.

17. Affidavit of F.B. Yoakum, Jr. (Dkt. 33).

18. *Id.* at 6.

19. Dkt. 22, ¶ 10 at 4.

points out that travel time and lodging expense for Jack Cohen and other SEI personnel is far less from New York to Wilmington than New York to Los Angeles.[20] In addition, SEI argues that Wilmington is far more convenient for two of its primary witnesses, Jay Woodward and Ronald Fazio. These two witnesses reside in Lexington, Kentucky and Saratoga Springs, New York, locations which are closer to Wilmington than Los Angeles. These factors, the plaintiff contends, require that this action not be transferred to California.

The Court does not doubt that trial in the Central District would be somewhat more inconvenient to the plaintiff than trial in Delaware. Travel time from New York is approximately four times greater to Los Angeles than Wilmington. Nevertheless, the distance between New York and Wilmington would require SEI's personnel to stay in Wilmington during the course of the trial in any event, the same thing that they would be required to do if trial were held in California. *Pall Corp.*, 523 F.Supp. at 453. As such, once initial travel expenses are incurred, it would cost SEI's personnel as much to lodge in Wilmington as in Los Angeles. As Chief Judge Latchum has stated in a similar situation:

> Undoubtedly, there would be some additional expense in traveling to California and shipping records there for trial, but the difference in such expenses .... would be insignificant compared to the overall costs of such litigation wherever tried.

*Id.*

The Court is equally unpersuaded that Wilmington is significantly more convenient for the two primary witnesses of the plaintiff. As previously stated, these two witnesses, Woodward and Fazio, reside in Kentucky and upstate New York, respectively. Both of these locations are several hundred miles from Wilmington. Conse-

quently, because these two witnesses must travel a substantial distance to testify at trial in any event, the Court finds that Wilmington is not significantly more convenient than Los Angeles for these witnesses.[21] *See Jackson Jordon, Inc. v. Plasser Am. Corp.*, C.A. 82–459, Slip Op. at 1–2 (D.Del., October 22, 1982).

Accordingly, the Court concludes that the defendants have demonstrated that the slight inconvenience to the plaintiff and its witnesses of litigating in California is substantially outweighed by the convenience of the defendants and their witnesses of litigating in the Central District.

## B. *Interests of Justice*

Section 1404(a) provides that transfer should be granted when to do so would further the interests of justice. There are two reasons why transfer in this case would further such interests. First, although Counts I and II are claims based upon the federal antitrust laws, Counts III and IV sound in state tort law. Delaware choice of law principles will determine which substantive law governs Counts III and IV, *see Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), and it is clear to the Court that these intentional tort claims will be governed by California law. *See Johnston Associates, Inc. v. Rohm & Haas Co.*, 560 F.Supp. 916, 918 (D.Del., 1983). Generally speaking, it is preferable for a court of the state whose substantive law controls the action to hear the case, and this is a factor to be considered on a motion to transfer. *See DeMateos v. Texaco, Inc.*, 562 F.2d 895, 900 (3d Cir.1977) (quoting *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978).

---

**20.** Affidavit of Jack Cohen, ¶¶ 19–20 at 6–7. The Cohen affidavit is attached as an appendix to the plaintiff's brief.

**21.** In addition, it appears that Woodward spends an extensive amount of time in California. *See, e.g.,* Second Supplemental Affidavit of Michael P. Sandler (Dkt. 35), ¶ 1 at 1. Consequently, California is probably a more convenient forum than Wilmington for at least one of the two primary witnesses of the plaintiff.

In this case, the need for a California court to hear the state law tort claims is particularly acute. It appears to this Court that Hollywood Park's clear position is that it can legally preclude SEI access to the racetrack, and restrain SEI from charting Hollywood Park races.[22] From a cursory examination of the legal issues raised by Hollywood Park's position, the Court finds that many difficult issues of California law may be involved in this case. *See generally, Morton v. Hollywood Park, Inc.,* 73 Cal. App.3d 248, 139 Cal.Rptr. 584 (1977). Consequently, the Court finds that the interests of justice would be greatly served if a California court considered these legal issues.[23]

Another interest of justice factor to be considered is the amenability of witnesses to compulsory process in California as opposed to Delaware. *See Jackson Jordan, Inc. v. Plasser Am. Corp.,* Slip Op. at 2. It appears from the record that many of the potential witnesses in this case are subject to the subpoena power of the Central District of California court. *See* Fed.R.Civ.P. 45(e)(1). Few, if any, of the relevant prospective witnesses are within this Court's subpoena power. Consequently, the greater power of the California court to ensure the live testimony of relevant witnesses weighs in favor of transfer.

In summary, the Court finds that this litigation concerns two key issues. The first is primarily a legal one, that being whether Hollywood Park, under California law, is legally able to prevent SEI from charting the Hollywood Park races. The second issue is whether DRF, in some manner, conspired with Hollywood Park to prevent SEI's chart gathering activities. As previously stated, the first issue involves areas of California law that are better resolved in a California court. The second issue, in essence, involves the factual question of whether the corporate heads of DRF conspired with executives of Hollywood Park to harm SEI. This alleged conspiracy took place in California, and hence the facts needed to support this claim must be found in California. Consequently, because the key legal and factual issues involve California, and for all the other reasons previously set forth, this case will be transferred to the Central District of California.

An appropriate Order will issue.

---

**22.** *See* Everett Letter to Jack Cohen at p. 636, *supra.* Indeed, this case may well be settled on a motion for summary judgment.

**23.** This is particularly true in this case because the state law claims are more critical. *See* footnote 7, *supra.*