**PENNWALT CORPORATION, Plaintiff,**

v.

**PUREX INDUSTRIES, INC. and TP Industrial, Inc., Defendants.**

Civ. A. No. 86–171 MMS.

United States District Court,
D. Delaware.

Oct. 7, 1986.

Jesse A. Finkelstein and Kevin G. Abrams of Richards, Layton & Finger, Wilmington, Del. (Robert C. Heim, Jeffrey G. Weil and Linda J. Wharton of Dechert Price & Rhoads, Philadelphia, Pa., of counsel), for plaintiff.

Kenneth J. Nachbar of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Gibson, Dunn & Crutcher, Los Angeles, Cal., of counsel), for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

In this diversity action between plaintiff Pennwalt Corporation ("Pennwalt") and defendants Purex Industries, Inc. ("Purex") and TP Industrial, Inc. ("TPI"), defendants have moved to transfer the case from this District to the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, defendants' motion will be granted.

## I. FACTS

This case arises out of a stock purchase agreement entered into between plaintiff Pennwalt and defendants Purex and TPI. The agreement provided for the purchase by Pennwalt of all the issued and outstanding capital stock of Turco Purex Industrial Corp. and Turco Products, Inc. (collectively "Turco"). In its complaint, Pennwalt claims breach of contract, negligent misrepresentation, and fraud with respect to the agreement.

Pennwalt alleges the unaudited pro forma operating statement Purex and TPI provided under the agreement contained omissions and inaccuracies on which Pennwalt relied in calculating a purchase price for Turco. Because the pro forma operating statement allegedly overstated Turco's earnings, Pennwalt offered and eventually paid an inflated price for the Turco stock. Specifically, Pennwalt claims that the operating statement was inaccurate because it failed to include various expenses associated with accounting personnel, sufficient funds for data processing services, expenses resulting from bad debts, self-insured liability losses, and claims by a former Turco employee. Purex and TPI have filed an answer and counterclaim, and both parties have initiated discovery.

Defendants have moved to transfer this action to the Central District of California. Plaintiff Pennwalt is a Pennsylvania corpo-

ration with its principal place of business in Philadelphia. Purex is a Delaware corporation with its principal place of business in Carson, California. At this time, Purex employs 16 people, all of whom reside in California. TPI is a California corporation with its principal place of business also in Carson, California. TPI was merged into Purex on January 1, 1986.

Turco Purex and Turco Products, the subjects of the stock purchase agreement, are Delaware corporations with their principal place of business in Westminster, California, although the largest Turco manufacturing plant is in Ohio. All of the face-to-face negotiations leading up to the stock purchase agreement took place in California. Some telephone discussions, however, were held between Pennwalt personnel in Philadelphia and either Purex personnel in California or investment bankers representing Purex and TPI in New York. The stock purchase agreement provides that it is governed by California law. California law also governs the employee claims against Turco, which were filed in California.

While Purex and TPI are centered in California, Pennwalt's management and primary negotiators, as well as its chief legal counsel, are located in Philadelphia. Almost all other party and nonparty witnesses, including the preparers of the allegedly defective pro forma operating statement and the present and former employees of the Turco accounting unit, reside in California. Three members of the investment banking firm of Goldman, Sachs & Co. represented Purex and TPI in the transaction and reside, respectively, in New York, California, and London.

Most of the pertinent documents, including the data underlying the pro forma operating statement and the records of the accounting unit, appear to be in California.

## II. MOTION TO TRANSFER

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (1982). Under section 1404(a), if venue is proper in the proposed transferee district, a district court may transfer a case if the convenience of the parties and the convenience of the witnesses compel a change of venue, and if a transfer will serve the interest of justice. For the reasons that follow this action will be transferred to the Central District of California.

### A. Venue

Neither party in this case questions that venue is proper in the Central District of California. "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business ..." 28 U.S.C. § 1391(c) (1982). Because both defendants Purex and TPI have their principal places of business in California, plaintiff Pennwalt could have brought this action in the proposed transferee district.

### B. Convenience of Parties and Witnesses

The convenience of the litigants and their witnesses is, of course, crucial in deciding a motion to transfer under section 1404(a). A district court should not grant such a motion, however, in every case in which a different forum might result in some net increase in convenience. In *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), the Third Circuit held:

It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice " * * * should not be lightly disturbed." ...
The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, and " * * * unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail."

*Id.* at 25 (citations omitted; emphasis in original). Thus, the law places a substantial burden on Purex and TPI to demon-

strate that Pennwalt should be deprived of its chosen forum.

A defendant's burden with respect to plaintiff's choice of forum is easier to meet where the plaintiff has not brought suit on its "home turf." *See Sports Eye, Inc. v. Daily Racing Form,* 565 F.Supp. 634 (D.Del.1983); *Clopay Corp. v. Newell Companies,* 527 F.Supp. 733 (D.Del.1981); *Pall Corp. v. Bentley Laboratories,* 523 F.Supp. 450 (D.Del.1981); *General Instrument Corp. v. Mostek Corp.,* 417 F.Supp. 821 (D.Del.1976). In *General Instrument,* Judge Stapleton observed that where a plaintiff chooses to litigate away from its principal place of business, "the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff." *Id.* at 823. Thus, whether or not a plaintiff has brought suit at—or near—its principal place of business or the site of the activities at issue in the lawsuit is simply another item to be placed on the scales in a weighing of the conveniences. *See Clopay,* 527 F.Supp. at 736; *Pall,* 523 F.Supp. at 452.

Despite this balancing approach, defendants argue that the "home turf" rationale gives rise to a *per se* rule that automatically disfavors a plaintiff's choice of forum whenever the plaintiff "does not maintain its 'home' within the four corners of this District." Defendants, relying upon their novel construction of the "home turf" doctrine, urge the court to give no weight to plaintiff Pennwalt's forum choice because its principal place of business is in Philadelphia, 30 miles from Wilmington and outside the forum District.

I do not agree with the proposition that whenever a plaintiff files outside its own forum, plaintiff's choice of forum is entitled to no weight in resolving a transfer motion. In each of the decided cases, the chosen forum was far enough away from the plaintiff's "home turf" that it was itself somewhat inconvenient for the plaintiff. Thus, the additional burden on the plaintiff resulting from a transfer was outweighed by the decrease in the burden on the defendant. For example, in *General Instrument,* the plaintiff's principal place of business was in Hicksville, New York. Judge Stapleton noted that even without a transfer "[i]t is unreasonable to think that plaintiff's officers and witnesses would be able to commute on a daily basis from Hicksville to trial in Wilmington," and on that basis permitted a transfer to the Northern District of Texas. 417 F.Supp. at 823. In *Sports Eye,* the plaintiff's principal place of business was also in suburban New York City. The Court permitted a transfer to the Central District of California, observing that "the distance between New York and Wilmington would require [plaintiff's] personnel to stay in Wilmington during the course of the trial in any event, the same thing that they would be required to do if trial were held in California." 565 F.Supp. at 639.

Clearly, this is not a case in which the plaintiff's chosen forum itself is burdensome to the plaintiff. Pennwalt is located within easy commuting distance of Wilmington; closer, in fact, than a great many places within the District of Delaware. It is for this reason that Judge Stapleton remarked:

> One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in a neighboring state.

*Burroughs Wellcome Co. v. Giant Food,* 392 F.Supp. 761, 763 n. 4 (D.Del.1975). Indeed, in *SEI Corp. v. Texas Commerce Bancshares,* C.A. No. 85-140, (D.Del. August 6, 1986), the Court denied a motion to transfer where the plaintiff's principal place of business was in Philadelphia, holding that "[u]nder these circumstances, Delaware qualifies as [plaintiff's] 'home turf' and Defendant must meet the heavy burden to show that the balance of interests weighs *strongly* in favor of transfer." *Id.,* at 2 (emphasis

in original). The same is true in this case.[1] Defendants Purex and TPI must therefore make the showing required by *Shutte* before the Court may grant the motion to transfer. Defendants have met their burden.

### 1. *Convenience of Parties*

Because plaintiff Pennwalt and defendants Purex and TPI are situated on opposite coasts, the Court's ruling on the transfer motion will unavoidably disadvantage one party or the other. Pennwalt argues a transfer in these circumstances would only redistribute the burdens of litigation rather than reduce the overall inconvenience.[2] Pennwalt cites *Derry Finance v. Christiana Companies*, 555 F.Supp. 1043 (D.Del. 1983), in which the Court held that "where a transfer would merely shift the inconvenience from one party to the other or where after balancing all the factors, the equities lean but slightly in favor of the movant, the plaintiff's choice of forum should not be disturbed." *Id.* at 1046 (quoting *De Luxe Game Corp. v. Wonder Products Co.*, 166 F.Supp. 56, 61 (S.D.N.Y.1958)).

The record in this case, however, indicates that the inconvenience defendant Purex would bear if compelled to litigate in this District is significantly greater than that plaintiff Pennwalt would bear if the Court permits transfer to California. Unlike Pennwalt, Purex is a small company in the process of liquidation and has only 16 employees. Attendance by any substantial number of these employees at a lengthy trial in Delaware would place a significant and onerous burden on Purex.[3] *See* Decla-

ration of William A. Finck, Docket Item 6 ("Dkt. ____"), at 3. In *Sun Oil Co. v. OKC Corp.*, C.A. No. 81–166 (D.Del. Nov. 16, 1982), the Court granted the motion to transfer of the defendant, a liquidating trust, despite the location of the plaintiff's principal place of business in nearby Philadelphia. Among other factors suggesting that transfer would do more than simply shift burdens between the parties, the Court noted that "since [defendant] is a very small operation with no ties to Delaware other than this forum being [its] state of incorporation, it would be most harsh for [defendant] to litigate this case so far from its principal place of business." *Id.*, slip op. at 6. *Compare SEI Corp. v. Texas Commerce Bancshares*, C.A. No. 85–140, (D.Del. Aug. 6, 1986) (finding instead that "transfer would serve no purpose but to shift the inconvenience of litigation from Defendant to Plaintiff."). As in *Sun Oil*, the convenience of the parties balances strongly in favor of transfer.

Defendants Purex and TPI also stress that various documents important to the litigation are situated in California. These include the data underlying the allegedly defective pro forma operating statement and the records of the Turco accounting unit. Although the comparatively low cost of transporting documents makes their location a less pressing consideration in deciding this motion, *see General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 823 (D.Del.1976), the presence of the bulk of the relevant materials in California also militates in favor of transfer.

---

**1.** Obviously, if Pennwalt had attempted to bring suit in the Eastern District of Pennsylvania, defendants would not question whether Pennwalt was on its "home turf." Because defendants are neither incorporated in nor doing business in Pennsylvania, however, the suit might well have been dismissed for improper venue or for lack of jurisdiction over defendants.

**2.** In this regard, plaintiff Pennwalt asserts that its chief legal counsel is located in Philadelphia, apparently urging the Court to take this fact into account. Although some cases refer to the location of counsel in deciding transfer motions, *see Clopay Corp. v. Newell Companies*, 527 F.Supp. 733, 736 (D.Del.1981), the better rule is that "convenience of counsel is not a factor to be

considered in a motion to transfer." *Banks v. Marine Navigation Sulphur Carriers*, 545 F.Supp. 39, 42 n. 2 (E.D.Pa.1982).

**3.** At oral argument on this motion, Pennwalt suggested that because Purex is in the supposedly uncomplicated and passive business of liquidation, the convenience of its employees is not entitled to as much weight as that of the employees of a going concern. No facts in the record support Pennwalt's assertion. Moreover, Pennwalt is able to cite no case law suggesting that the relative workloads of the parties or the comparative social or economic value of their activities should be considered in a motion to transfer.

## 2. Convenience of Witnesses

The availability of witnesses, in particular the amenability of nonparty witnesses to subpoena,[4] is in the context of this case the most crucial factor in deciding this motion to transfer. It is desirable to hold trial at a place where the personal attendance of witnesses through use of the subpoena power can be reasonably assured. The alternative is to force the litigants to use deposition testimony. *See Fogel v. Wolfgang*, 48 F.R.D. 286, 291 (S.D.N.Y.1969). The problem of securing live witnesses is arguably even more acute in cases, such as this one, in which a jury trial has been demanded.

The record in this case indicates that the vast majority of the potential nonparty witnesses reside in California.[5] *See* Supplemental Declaration of William A. Finck, Dkt. 18, at 2–3. Many of these potential witnesses are former employees of either Purex or Turco, who cannot be compelled by either party to attend trial in Delaware, or are current employees of Turco, whose attendance can theoretically be controlled only by Pennwalt, which now owns Turco. In *Sun Oil Co. v. OKC Corp.*, C.A. No. 81–166 (D.Del. Nov. 16, 1982), discussed above, the Court permitted transfer after noting that the plaintiff, but not the defendant, still employed most of its witnesses and could control their attendance at trial in any forum. *Id.*, slip op. at 6. *Compare SEI Corp. v. Texas Commerce Bancshares*, C.A. No. 85–140 (D.Del. Aug. 6, 1986) ("Although a significant number of Texas witnesses will be called by the Defendant to testify at trial, an equally impressive list of potential Pennsylvania witnesses

has been submitted to the Court by Plaintiff for purposes of this motion.... [T]ransfer of the action to Texas would only shift the burden from Defendant to the Plaintiff to produce witnesses not subject to the compulsory process power of the forum's district court."). Because trial in Delaware will substantially deny Purex and TPI the opportunity to procure live testimony in support of their case,[6] but transfer to California will allow all parties to have live testimony, the convenience of the witnesses balances strongly in favor of transfer.

## C. Interest of Justice

Under section 1404(a), any transfer must be "in the interest of justice." Not only factors affecting the convenience of the litigants, but also factors affecting the convenience of the forum are grouped under this broad rubric. These latter considerations include the interest in having localized controversies decided at home and the interest in having diversity cases tried in a court familiar with the law to be applied. *See Harris Trust & Savings Bank v. SLT Warehouse Co.*, 605 F.Supp. 225, 227 (N.D. Ill.1985). The interest of justice supports transfer of this case to the Central District of California.

First, the "center of gravity" in this case decidedly tends toward the proposed transferee forum. *See Sports Eye, Inc. v. Daily Racing Form*, 565 F.Supp. 634, 638 (D.Del.1983); *Clopay Corp. v. Newell Companies*, 527 F.Supp. 733, 736 (D.Del. 1981). Turco, the subject of the stock purchase agreement, has its principal place of business in California and none of its man-

---

**4.** Under Fed.R.Civ.P. 45(e)(1), "[a] subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena." Thus, nonparty witnesses residing in California would not be subject to the compulsory process power of this Court.

**5.** In a motion to transfer, the defendant must file affidavits specifically identifying its witnesses and their residences, and outlining generally the content and relevance of their testimony. *See Atlantic Richfield Co. v. Stearns-Roger, Inc.*,

379 F.Supp. 869, 871 (E.D.Pa.1974). Purex initially failed to make such a filing, but cured this problem before submitting its reply brief in support of its motion to transfer. *See* Supplemental Declaration of William A. Finck, Dkt. 18, at 2–3.

**6.** The only potential nonparty witnesses not residing in California appear to be Kenneth M. Jacobs and Joseph Gleberman, both of Goldman, Sachs & Co. Mr. Gleberman resides in New York; Mr. Jacobs lives in London and would not be subject to compulsory process in whatever district court the trial is held.

ufacturing plants are in or near this District. The bulk of the negotiations preceding the agreement either took place in California or were conducted by telephone with one party located in California. The employee claims against Turco were filed in California. A clear preponderance of the witnesses and relevant documents are situated in California. Because transfer will permit an essentially local controversy to be decided locally, consideration of the subject matter of the litigation supports transfer.

Second, the stock purchase agreement at issue expressly provides that California law is to govern disputes between the parties. Although the choice of law factor is important in cases where the foreign law to be applied is difficult or unsettled, *see Sports Eye,* 565 F.Supp. at 639–40 (tortious interference with prospective contractual relations), it is less crucial in other cases. *See Ocean Science and Engineering, Inc. v. International Geomarine Corp.,* 312 F.Supp. 825, 830 (D.Del.1970) (breach of contract). Plaintiff Pennwalt's claims involve straightforward issues of contract and tort, with which this Court is familiar. The application of foreign law in the context of this case does not clearly tip the balance in favor of transfer.

Finally, this case is in an early phase. The pleadings to date consist of Pennwalt's complaint; Purex's motion to transfer, answer, and counterclaim; and Pennwalt's answer to the counterclaim. Both parties have made initial requests for discovery. Although Pennwalt argues that transfer should be denied because the case has "not been dormant," Plaintiff's Answering Brief in Opposition to Defendant's Motion to Transfer, at 16, it fails to show how it will be prejudiced by a transfer at this stage of the proceedings. *See Essex Crane Rental Corp. v. Vic Kirsch Construction Co.,* 486 F.Supp. 529, 535 (S.D.N.Y.1980). Thus, timing does not weigh against transfer.

## III. CONCLUSION

Although plaintiff Pennwalt can be said to be litigating on its "home turf," I hold that the factors set forth in section 1404(a)

balance strongly in favor of transfer. Accordingly, defendants' motion to transfer this action to the Central District of California will be granted.